Slip Op. 03-119

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                :

G&R PRODUCE COMPANY, et al.,     :
                                  :

              Plaintiffs,     :

                                  :        Before: WALLACH, Judge
              v.                :        Consol. Court No.: 96-11-02569
                                  :

UNITED STATES,                 :
                                  :

              Defendant.     :
_____:

[Judgment for Plaintiff.]

Decided: September 15, 2003

Givens and Johnston, PLLC (Robert T. Givens, Scott L. Johnston), for Plaintiffs.

David W. Ogden, Assistant Attorney General; John J. Mahon, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, Department of Justice, Amy M. Rubin, Trial Attorney; Beth C. Brotman, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for Defendant.

WALLACH, Judge.

## FINDINGS OF FACT & CONCLUSIONS OF LAW

### I.
### INTRODUCTION

This matter is before the court for decision following a bench trial on February 26, 2003.

Plaintiff, G&R Produce Co., with ten other consolidated parties, ("Plaintiffs") challenge the

United States Customs Service's[1] ("Customs") refusal to reliquidate certain entries of Persian limes.[2] This consolidated case was brought after Customs refused to stipulate judgment in each individual matter, pursuant to this court's holding in Black & White Vegetable Co. v. United States, 125 F. Supp. 2d 531 (CIT 2000).[3] The court previously opined in G&R Produce I that material facts were in issue as to whether the Customs import specialists were aware of the proper botanical classification of the limes, and the significance of their choice of tariff classification.

In this matter, Plaintiffs claim that Customs was a party to the entry of Persian limes under an incorrect tariff provision for over five years and that Customs misclassified their lime entries because the import specialists were not aware of the correct scientific and botanical facts regarding the limes. According to Plaintiffs, Customs erred in denying both their request to have their Persian Lime entries reliquidated and their subsequent protests. Therefore, Plaintiffs seek the reliquidation of their entries and a full refund of duties paid.

---

[1] The United States Customs Service is now organized as the Bureau of Customs and Border Protection.

[2] More than 1,400 entries of limes are at issue in this case. Eleven cases were consolidated by order of the Court dated October 26, 2001. The consolidated cases in this action are: G&R Produce Co. v United States, Court No. 96-11-02569; I. Kunick Co. v. United States, Court No. 96-11-02570; Rio Produce Co. v. United States, Court No. 96-11-02571; McAllen Fruit & Vegetable, Co. v. United States, Court No. 96-11-02572; Robert Ruiz, Inc. v. United States, Court No. 96-11-02573; London Fruit, Inc. v. United States, Court No. 96-11-02574; G-M Sales Co. v. United States, Court No. 96-11-02597; Val-Verde Vegetable Co. v. United States, Court No. 96-11-02608; Frontera Produce, Inc. v. United States, Court No. 96-11-02610; Trevino International, Inc. v. United States, Court No. 96-11-02617; and Limeco, Inc. v. United States, Court No. 97-08-01351.

[3] Familiarity with the court's decisions in Black & White Vegetable Co. v. United States, 125 F. Supp. 2d 531 (CIT 2000) and G&R Produce Co. v. United States, 245 F. Supp. 2d 1304 (CIT 2002) ("G&R Produce I") is presumed.

Defendant argues that regardless of whether the parties were mistaken as to the botanical names and varieties of the limes, the Persian limes at issue were misclassified as a result of an error in the construction of the law, specifically, an error in the interpretation of the tariff phrase "limes (*Citrus aurantifolia)*" in subheading 0805.30.40 of the HTSUS and therefore, the Plaintiffs have not met the statutory criteria required for relief.

Pursuant to the following findings of fact and conclusions of law, and in accordance with USCIT R. 52(a), the court enters a final judgment in favor of Plaintiffs and against Defendant**.**

**II.**
**BACKGROUND**

Plaintiffs imported *Citrus latifolia*, commonly known as Persian limes, from Mexico in 1993 and 1994. The imported limes were classified under subheading 0805.30.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which encompassed "Citrus Fruit, fresh or dried: Lemons (Citrus limon, Citrus Limonum) and limes (Citrus Aurantifolia): Limes."[4] Different botanical varieties of limes were distinguished in the tariff schedule effective January 1, 1989. Limes, *Citrus aurantifolia*, were listed *eo nomine* while other lime varieties, including *Citrus latifolia*, were classified as "other" at a lower duty rate.[5]

---

[4] The Harmonized Tariff Schedule of the United States ("HTSUS") Subheading, 805, provided for:

    0805....Citrus fruit, fresh or dried:

        0805.30....Lemons (Citrus limon, Citrus limonum) and limes (Citrus aurantifolia):

        0805.30.40...Limes

[5] HTSUS Subheading 0805.90.00, provided for:

3

On June 30, 1994, Customs posted Administrative Message 94-0661 ("Administrative Message") that gave notice of statistical breakout changes to subheading 0805.90.00. Effective July 1, 1994, a statistical modification and an additional breakout, 0805.90.00.10, which referenced *Citrus latifolia, eo nomine*, were added to the HTSUS.[6]

After publication of the Administrative Message, Customs and Plaintiffs discovered that Plaintiffs' lime entries were being classified under the wrong tariff number. Subsequently, Plaintiffs requested that Customs reliquidate its entries. Customs treated Plaintiffs' requests as mistake of fact claims pursuant to 19 U.S.C. § 1520(c)(1) (1994)[7] and decided Plaintiffs had not

---

0805....Citrus fruit, fresh or dried:

    0805.90.00....Other, including kumquats, citrons and bergamots

[6] HTSUS Subheading 0805.90.00.10, provided for:

0805.  Citrus fruit, fresh or dried:

    0805.90.00     Other, including kumquats, citrons and bergamots.

    0805.90.00.10        Tahitian limes, Persian limes and other limes of the citrus latifolia variety.

[7] In relevant part, 19 U.S.C. § 1520(c)(1) stated:

Notwithstanding a valid protest was not filed, the Customs Service may, in accordance with regulations prescribed by the Secretary, reliquidate an entry or reconciliation to correct --

(1) a clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in electronic transmission, not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the Customs Service within one year after the date of liquidation or exaction.

met the statutory criteria. Therefore, Customs denied Plaintiffs' request for reliquidation and subsequent protests.

## III.
## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction of the Court is found under 28 U.S.C. § 1581(a) (1994), which provides for judicial review of denied protests filed in compliance with the provisions of 19 U.S.C. § 1514 (1999). Although Customs's decisions are entitled to a presumption of correctness under 28 U.S.C. § 2639(a)(1) (1994), the Court makes its determinations upon the basis of the record made before the Court, rather than that developed by Customs. See United States v. Mead Corp., 533 U.S. 218, 233 n.16, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001). Accordingly, the Court makes the following findings of fact and conclusions of law as a result of the *de novo* trial. See 28 U.S.C. § 2640(a) (1994).

## IV.
## FINDINGS OF FACT

### A. Facts Uncontested by the Parties and Agreed to in the Pretrial Order

1. The merchandise in issue consists of fresh Persian limes imported into the United States from Mexico in 1993 and 1994.

2. The botanical name for the limes in issue is *Citrus latifolia*.

3. Limes of the *Citrus latifolia* variety are a distinct botanical variety from limes of the *Citrus aurantifolia* variety.

4. The phrase *Citrus aurantifolia* refers to a variety of limes, but is not a synonym for the word limes.

5. Plaintiffs' Persian limes were entered under subheading 0805.30.40 of the HTSUS, that referred to "Limes (Citrus Aurantifolia)," *eo nomine*, at a duty rate of 2.2 cents per kilogram during 1993 and 1.9 cents per kilogram during 1994.

6. Customs liquidated the limes under HTSUS subheading 0805.30.40 and imposed duties.

7. Plaintiffs' entries of limes of the *Citrus latifolia* variety should have been entered under HTSUS subheading 0805.90.00, at a duty rate of .9% ad valorem in 1993 and duty free in 1994.

8. Plaintiffs' entries of Persian limes were misclassified upon entry and liquidation.

9. The classification error is manifest from the record.

10. On June 30, 1994, the Committee for Statistical Annotation published statistical modifications, which included a breakout of subheading 0805.90.00, expressly encompassing "Tahitian limes, Persian limes and other limes of the *Citrus latifolia* variety.

11. Information regarding the statistical breakout was disseminated by the Customs Service through Administrative Message 94-0661.

12. Each of the importers in this consolidated action submitted requests for Customs to reliquidate their entries under subheading 0805.90.00 more than ninety days following liquidation.

13. Customs treated the importers' requests as claims under 19 U.S.C. § 1520(c)(1).

14. Customs denied Plaintiffs' claims for relief under § 1520(c)(1).

15. Plaintiffs filed protests with Customs.

16. All of the protests involved in this consolidated action were filed, and the actions commenced, within the time provided by law.

17. All liquidated duties and fees relating to the imported merchandise were paid.

**B. Facts Established at Trial**

18. The Court permitted the Defendant to read into the record various excerpts from Plaintiffs' customs brokers depositions; and enter them into evidence.

19. Customs designated Ms. Gonzalez-Castilleja as its agent in response to Plaintiffs' notice of deposition in this case. The Court found the testimony of Ms. Gonzalez-Castilleja, a Customs

6

import specialist with more than fifteen years of experience, highly probative and credible.

20. In December 1991, Customs Team 688, for the port of Laredo, Texas, was formed.

21. Customs Team 688 was responsible for classifying merchandise and entries that fell under the first 24 chapters of the HTSUS, which include citrus fruit and the variety of limes at issue.

22. Ms. Gonzalez-Castilleja was responsible for overseeing Team 688 and insuring that entries of merchandise were accurately classified, and that the team complied with Customs regulations and other Government agency requirements.

23. Ms. Gonzalez-Castilleja has been the Customs Team leader in charge of Team 688 since its formation.

24. In 1993 and 1994 Ms. Gonzalez-Castilleja and Team 688 were responsible for lime entries in for the Laredo service port and the Brownsville, Progresso, Hidalgo, Rio Grande City, and Roma ports of entry.

25. Both Key limes and Persian limes were imported through the Hidalgo port of entry.

26. Ms. Gonzalez-Castilleja and her team received training on bypass procedures and she was familiar with Customs Directive No. 3550-26, entitled Entry Simplification - Bypass Procedure.

27. Ms. Gonzalez-Castilleja placed Persian limes on bypass because she had no issues with their entry and liquidation.

28. Bypass entries are subject to random sampling and review by Customs import specialists.

29. The majority of Plaintiffs' entries were placed on bypass.

30. Ms. Gonzalez-Castilleja and the Customs import specialists knew that the HTSUS referenced *Citrus aurantifolia* under subheading 0805.

31. Ms. Gonzalez-Castilleja did not know that more than one botanical variety of limes existed until after publication of the Administrative Message.

32. Ms. Gonzalez-Castilleja did not know the specific scientific and botanical nomenclature for the Plaintiffs' lime varieties at the time of their entry.

33. Ms. Gonzalez-Castilleja mistakenly believed at the time of Plaintiffs' lime entries that the botanical phrase *Citrus aurantifolia* described all limes.

34. Ms. Gonzalez-Castilleja did not know that the correct botanical name for Plaintiffs' Persian limes was *Citrus latifolia* until after publication of the Administrative Message.

35. The Plaintiffs' customs brokers did not know the taxonomy for lime varieties.

36. Customs' import specialists neither exercised judgment nor made a classification decision based upon the taxonomy or botanical names of the limes.

37. Ms. Gonzalez-Castilleja would have classified the limes differently, prior to publication of the Administrative Message, had she known two distinct varieties of limes existed, and the correct botanical name for each.

38. Once the erroneous classification was discovered, Ms. Gonzalez-Castilleja classified the limes at issue under the correct subheading, 0805.90.00, and removed the entries from bypass. She contacted the responsible Customs Import Specialist to confirm the change in classification. She contacted the Texas Agricultural Extension Service and the University of Florida, horticulture science department to confirm that the botanical variety of Persian limes was *Citrus latifolia*. Additionally, she sent a memo to the trade advising them to include the scientific name/botanical name on their invoices so Customs could distinguish between types of limes.

39. Ms. Gonzalez-Castilleja would have acted to insure that Plaintiffs' Persian limes were accurately classified had she known two scientific names existed prior to mid-1994. She would not have placed Persian lime entries on bypass unless she had verified that they were being entered and liquidated accurately. She would have called all of the customs brokers filing entries of the limes to notify them of a tariff classification change. She would have contacted the responsible Customs Import Specialist to confirm the change in classification.

40. If any of these Findings of Fact shall more properly be Conclusions of Law, they shall be deemed to be so.

## V.
## CONCLUSIONS OF LAW

1. Following oral argument in G&R Produce I, it was unclear whether the entry documents apprised the Customs import specialists of the proper botanical classification. Thus, the Court denied the parties' motions for summary judgment and stated in its opinion that

8

While it may be true the specialists classified the limes under the incorrect tariff provision because it referred to limes *eo nomine*, the court cannot ascertain whether being apprised of the limes' proper botanical classification would have altered the specialists' behavior. Certainly, it is possible, *inter alia*, that if the import specialists were indeed unaware that the limes are of the *citrus latifolia* variety, being apprised of this fact may have alerted them that the reference to *citrus aurantifolia* "was a limitation on the types of limes that were classifiable in that provision" and that their assumption "that the phrase 'citrus aurantifolia' was synonymous with the term 'limes' immediately preceding the parenthetical" was erroneous. In other words, Ms. Gonzalez-Castilleja's statement fails to clarify whether "the facts exist, but [were] unknown" to her and her teammates upon entering the limes. As it stands, this statement can plausibly support the assertion that the Customs import specialists misclassified the limes due to a factual mistake.

G&R Produce I, 245 F. Supp. 2d at 1312.

2.      In this instance, Defendant claimed that in order to "prevail on its claim that its imported Persian limes were misclassified because of a factual mistake as to the limes' botanical name, plaintiff had to prove . . . that the relevant parties were actually *unaware* of the correct botanical names for these limes." Defendant's Post-Trial Brief at 21-22 (emphasis added). Defendant's characterization is not what the Court held in G&R Produce I, 245 F. Supp. 2d at 1312. Furthermore, the Court does not require that Plaintiffs prove this assertion.

3.      Defendant's claim illustrates one of the classic logic fallacies: *argumentum ad ignorantiam,* an argument from ignorance.[8] This type of fallacy asserts that because something has not been proved true, it is therefore false.[9] The underlying predicate to Defendant's argument

[8] "Another way that men ordinarily use to drive others and force them to submit to their judgments, and receive their opinion in debate, is to require the adversary to admit what they allege as a proof, or to assign a better. And this I call *argumentum ad ignorantiam*" John Locke, Essay Concerning Human Understanding 686 (Peter H. Nidditch ed., 1975).

[9] "The argument from ignorance is the mistake that is committed when it is argued that a proposition is true simply on the basis that it has not been proved false, or that it is false because it has not been proved true." Irving M. Copi & Carl Cohen, Introduction to Logic 116 (9th ed.

9

is that the parties were aware of the correct botanical name. This proposition may not be logically proven by lack of evidence that the parties were *unaware* of the correct botanical name. Defendant mistakenly assumes that an absence of evidence to support its proposition establishes the proposition. "New knowledge must be derived from some measure of knowledge." Ruggero J. Aldisert, Logic for Lawyers 190-91(3d ed. 1997). The Court cannot make a finding that a party has knowledge based on Defendant's claim. See id.

4.      Following G&R Produce I, the remaining issues for the Court's resolution were whether the Customs import specialists were *aware* of the scientific facts and proper botanical classification of the limes; and the significance of their choice of tariff classification. See G&R Produce I, 245 F. Supp. 2d at 1312. This Court has previously held that "[t]axonomical classification is inherently factual; whether an import be fish or fowl, lemon or lime is a question resolved by quantities manifest in its nature." Black &White, 125 F. Supp. 2d at 544; G&R Produce I, 245 F. Supp. 2d at 1311 (CIT 2002). In order to succeed on their mistake of fact claim the Plaintiffs need only demonstrate the correct facts and "'that *either* the importer or Customs had a mistaken belief as to the correct state of facts,'" that did not amount to an error in the construction of the law. Black & White, 125 F. Supp. 2d at 543 (quoting Chrysler Corp. v. United States, 87 F. Supp. 2d 1339, 1352 (CIT 2000))(emphasis added).

5.      The taxonomical classification of an imported item is a question of fact. Plaintiffs' allegation, that their lime entries were misclassified because the parties were not aware of the correct scientific and botanical facts regarding the limes, contemplates the type of error that is remedial under 19 U.S.C. § 1520(c)(1). In general, decisions regarding the tariff treatment of

1994).

merchandise are "final and conclusive on all persons" unless a protest is filed within ninety days of notice of liquidation. 19 U.S.C. § 1514(a), (c)(2) (1994). Pursuant to 19 U.S.C. § 1514, an importer may protest the classification of merchandise when the importer believes Customs has erred. See Taban Co. v. United States, 21 CIT 230, 237, 960 F. Supp 326, 332 (1997). Section 1520(c)(1) is an exception to the finality of liquidation and permits reliquidation of imported merchandise to correct clerical errors, mistakes of fact, or other inadvertences not amounting to an error of law, if brought to Customs attention within one year of liquidation.[10] 19 U.S.C. § 1520(c)(1); 19 C.F.R. § 173.4 (1994). However, section 1520(c)(1) does not provide a remedy for all mistakes, and only offers limited relief to the importer in the situations described in the statute. See PPG Indus., Inc. v. United States, 7 CIT 118, 123 (1984).

6.     Defendant claims that Plaintiffs' lime entries were misclassified because the relevant parties determined that these limes were covered by a particular tariff provision and that determination proved to be wrong. Defendant argues that "[e]veryone was aware of the parenthetical phrase '*Citrus aurantifolia*,' but no-one interpreted that phrase as placing a limitation on the immediately preceding term 'limes' according to botanical variety."

---

[10] The regulation for a correction of an clerical error, mistake of fact, or inadvertence, 19 C.F.R. § 173.4(b) (1994), provides that a

[c]orrection pursuant to . . . 19 U.S.C. § 1520(c)(1), may be made in any entry, liquidation, or other Customs transaction if the clerical error, mistake of fact, or other inadvertence:

(1)     Does not amount to an error in the construction of a law;

(2)     Is adverse to the importer; and

(3)     Is manifest from the record or established by documentary evidence.

11

Defendant's Post-Trial Brief at 4. A determination by the Customs service that merchandise is covered by a certain tariff provision is a conclusion of law. See Cavazos v. United States, 9 CIT 628, 630 (1985). The Court of Appeals for the Federal Circuit, in Executone Info. Sys. v. United States, 96 F.3d 1383 (1996), stated that a typical challenge to a Customs decision exists where "Customs evaluated the merchandise and, based on its construction of the tariff schedule, determined into which of two categories the merchandise must be placed . . . . In such a case, there is no dispute that the only proper course of action would have been to file a timely protest under section 1514." Id. at 1388. The distinction between a mistake of law, and a mistake of fact is that a mistake of fact occurs in instances where either (1) the facts exist, but are unknown, or (2) the facts do not exist as believed. See Hambro Auto. Corp. v. United States, 603 F.2d 850, 855 (CCPA 1979). A mistake of law, however, occurs when "the facts are known, but their legal consequences are not known or are believed to be different than they really are." Id.

7.      In cases where the Court has concluded that a party did not know the facts as they really were, and therefore lacked true knowledge of the ultimate character of the merchandise, the Court has found a mistake of fact exists. See Taban Co. v. United States, 21 CIT 230, 240, 960 F. Supp. 326, 334 (1997); Zaki Corp. v. United States, 21 CIT 263, 273, 960 F. Supp 350, 356 (1997). "Section 1520(c) requires only that a mistake of fact by *either* party result in the erroneous classification." G&R Produce I, 245 F. Supp. 2d at 1306 (emphasis added).

8.      One of the leading cases involving a mistake of fact is C.J. Tower & Sons of Buffalo, Inc. v. United States, 68 Cust. Ct. 17, 336 F. Supp. 1395 (1972). In C.J. Tower, neither Customs nor the importer were aware that the importer's entries constituted emergency war materials, entitled to duty free treatment, until after the liquidation of the importer's entries became final. Id. The

Customs Court, predecessor to the Court of International Trade, discussed the legislative history of various bills and hearings held prior to the passage of the Customs Simplification Act of 1953, 67 Stat. 507, 519 §20 and explained that in the hearings prior to the passage of §1520 the Government stated that "the correction of errors and mistakes of the importers *or the Customs Service* in customs transactions" should be corrected in order "to do justice to the importing public."[11] Id. at 1399 (quoting hearings on H.R. 5505 before the Senate Committee on Finance, 82nd Cong., 2d Sess., 30 (1952))(emphasis added). The Customs Court ultimately found that mistakes that were not of a physical nature and not readily apparent, but rather required some further knowledge about the merchandise, i.e., its status as duty free war materials were mistakes of fact. Id. at 1400.

9.      This Court further distinguished decisional mistakes, a wrong choice between two alternate sets of facts, and ignorant mistakes, where a party is unaware of the correct facts in Universal Coop., Inc. v. United States, 13 CIT 516, 518, 715 F. Supp. 1113, 1114 (1989). In Universal Coop., the plaintiff entered merchandise under a duty-free classification. Id. Based on a laboratory analysis of the merchandise, Customs determined that it was classifiable under a different tariff subsection, which was not duty free. Id. The plaintiff filed a petition for reliquidation under 19 U.S.C. § 1520(c)(1), which was denied. Id. Thereafter, the plaintiff filed a timely protest against Customs refusal to reliquidate, and, after that protest was denied, brought

---

[11] In these hearings the Government expressed the opinion that it had no interest in retaining duties improperly collected that resulted from a clerical error, mistake of fact, or other inadvertence. C.J. Tower, 336 F. Supp. at 1399 (1972) (discussing hearings on H.R. 5505 before the Senate Committee on Finance, 82nd Cong., 2d Sess., 30 (1952)). Furthermore, the Government acknowledged in the hearings that the inability to make refunds in such cases results in "great dissatisfaction and a feeling of injustice among importers." Id.

suit. Id. The Plaintiff's action was based on the premise that Customs' determination was a mistake of fact. The Court explained that decisional mistakes had to be challenged by a protest, pursuant to 19 U.S.C. § 1514, while ignorant mistakes could be remedied pursuant to 19 U.S.C. § 1520(c).[12] Id. The Court ultimately held that Customs' determination was a decisional, and therefore, was not remedial under section 1520(c). Id. at 1114-15.

10.     The necessary predicate to a tariff classification decision is a factual determination of what is being classified. Defendant's characterization that the Plaintiffs' lime entries were misclassified because the relevant parties determined that the limes were covered by a particular tariff provision, and that determination proved to be wrong, misses the mark. While both parties were aware that the HTSUS contained a provision for limes, the testimony at trial indicates that the Customs did not know the correct botanical facts regarding the entries of Persian limes. Specifically, the Customs import specialists did not know that Plaintiffs' limes were not *Citrus*

---

[12] Applying this distinction, the Court in Universal Coop. stated that:

    If there was a mistake here, it was surely of the decisional type. . .[T]he government . . . made a decision that the [merchandise] w[as] less than one inch wide. This created a situation for which the conventional protest method of 19 U.S.C. § 1514 was manifestly designed, i.e., *an importer with a fully informed position regarding its merchandise, confronting an informed, but adverse decision by the government.* One of them may have been mistaken as to the correct state of the facts, *but it was not from total ignorance of a possible alternative state of facts. . . .*

    . . .[A]ll relevant positions as to the facts were known prior to the original liquidation and it would have been no hardship, and certainly no impossibility, for plaintiff to have made a timely protest against that liquidation. *If the government was mistaken as to the facts as a result of having chosen incorrectly from a number of known alternatives, then the condition precedent for contesting that decision in court was the making of a timely protest under Section 514*, thus allowing the question to be considered administratively in the most orderly and efficient way.

Universal Coop., 715 F. Supp. at 1114-15 (emphasis added).

14

*aurantifolia*. The testimony showed both parties recognized that immediately following a subheading was a parenthetical containing the phrase "*Citrus aurantifolia*," however, Ms. Gonzalez-Castilleja testified that prior to publication of the administrative message she believed that the phrase *Citrus aurantifolia* described all limes. Ms. Gonzalez-Castilleja also testified that she had not heard of the botanical lime variety *Citrus latifolia* until after the issuance of the Administrative Message. Customs made an initial ignorant or factual mistake as to not only the botanical variety of limes it was classifying but also as to the existence of other taxonomical classifications for lime varieties. Unlike the decisional mistake described in Executone Info. Sys., 96 F.3d at 1388, where Customs construed the tariff schedule and determined into which subheading the merchandise belonged, here, Customs first inaccurately determined the product, and then classified the limes according to that inaccurate knowledge. Thus, Customs made an ignorant factual mistake about the merchandise before the limes were classified.

11.     The underlying assumption to Defendant's claim that a mistake of law was made, because no-one interpreted the phrase *Citrus aurantifolia* as placing a limitation on the immediately preceding term 'limes' according to botanical variety, see Defendant's Post-Trial Brief at 4, is that both parties knew the correct botanical and scientific facts; or that Customs knew that another taxonomical classification for limes, besides *Citrus aurantifolia*, existed. The testimony at trial showed that Customs did not know the correct factual information that would have allowed the import specialists to make a choice between alternative sets of facts (i.e., a decisional mistake). Customs was neither fully informed nor aware of the correct respective facts that might have informed them of a potential alternative classification. As stated above, while it is true that everyone was aware of the parenthetical phrase *Citrus aurantifolia*, the necessary link

15

that is absent from Customs reasoning is the fact that the Customs import specialists did not know that the Plaintiffs' limes were not *Citrus aurantifolia.* The Customs import specialists did not interpret the botanical phrase in the HTSUS as placing a limitation on the preceding term 'limes' because the parties did not know that another taxonomical classification for limes existed.

12.     The Defendant's other claim, that the scientific name for the limes would not have mattered to Customs' classification decision, is contradicted by Ms. Gonzalez-Castilleja testimony. Customs was aware that the parenthetical *Citrus aurantifolia* followed the term limes, but mistakenly believed that Persian limes were *Citrus aurantifolia.* Ms. Gonzalez-Castilleja testified that had she known the correct scientific and botanical facts she would have accurately classified the limes. Accurate knowledge of the merchandise is the first step in any classification decision and Customs' ignorance of the correct facts does not convert its factual mistake into a legal interpretation in this instance. Thus, the Court does not impute a legal interpretation on Customs' when the requisite facts were clearly unknown.

13.     Congress provided a liberal mechanism for the correction of clerical errors, mistakes of fact, and other inadvertence through section 1520(c)(1). See ITT Corp. v. United States, 24 F.3d 1384, 1389-90 (Fed. Cir. 1994). Because Customs was not aware of the correct botanical facts regarding the limes, they could not have exercised judgment nor made a classification decision based upon the taxonomy or botanical names of the limes. The Court finds the Customs' import specialists made a mistake of fact when classifying Plaintiffs' lime entries because the import specialists were neither aware of taxonomical facts regarding the limes nor the limes correct scientific or botanical nomenclature. Therefore, Customs mistake of fact as to the correct

taxonomy, and botanical and scientific names for the limes, is remedial under § 1520(c).

14.     The Defendant alternately claims that because Plaintiffs used the electronic entry system, and the majority of Plaintiffs' entries were on entry summary selectivity bypass, ("bypass") the customs brokers, and not Customs' import specialists, are responsible for classification errors.[13] See Defendant's Post-Trial Brief at 10, 30-32.  Defendant claims that "while we do not dispute that, as a general proposition, 19 U.S.C. § 1520(c)(1) can be used to remedy a clerical error, mistake of fact or other inadvertence by anyone connected with an entry, including a Customs employee, when the claim relates to a bypass entry, the reviewer should only consider the "mistakes" of those who had an ability to affect the entry. . . ." Id. at 30-31.  Thus, Defendant asserts that only customs brokers could have made the relevant determination respecting bypass entries.[14]

15.     Ms. Gonzalez-Castilleja testimony at trial reflects that the fact that Customs misclassified Persian lime entries.  Ms. Gonzalez-Castilleja testified that Customs uses its bypass procedure to

_____

[13] Importers and their brokers are responsible for submitting entry summary data to Customs. The Automated Broker Interface ("ABI") is an electronic method that customs brokers may use to transmit the required entry data to Customs. Additionally, Customs tracks imported merchandise through their Automated Computer System ("ACS").

[14] The depositions that Defendant read and entered into evidence at trial reveal that he customs brokers were also unaware of the correct scientific and botanical facts regarding the Plaintiffs' entries of limes. While the brokers knew that more than one type of lime existed, i.e. a Key lime versus an Persian lime, the brokers did not know that more than one taxonomical type of lime existed.  The deposition of Jose Guerra indicates that prior he was not aware of the correct botanical name for the Persian limes. Defendant's Exhibit A, Guerra Deposition. The testimony of Jimmy Santos indicates that he believed that *Citrus aurantifolia* was the botanical name for Persian limes. Defendant Exhibit B, Santos Deposition. The deposition of Jose Arevalo indicates he did not know the correct botanical name for Persian limes. Defendant Exhibit C, Arevalo Deposition. Finally, the deposition of Alex Trevino indicates that he was unfamiliar with the scientific and botanical names for the limes at issue. Defendant's Exhibit D, Trevino Deposition.

manage its workload. In order to place entries on bypass, Customs reviews the entries' tariff classification for accuracy. Ms. Gonzalez-Castilleja stated that she would not have placed entries on bypass if she doubted that she was sufficiently familiar with the facts regarding a specific good. Furthermore, even while entries are on bypass, Customs continued to randomly sample and review entries for accuracy.

16.     The Court finds that Customs elected to place entries of limes on bypass for its own convenience and because it believed there were no classification or valuation issues involving those entries at the time she selected them. Although entry documents are provided to Customs by the Plaintiffs' importers, the original decision to place the lime entries on bypass was Customs' own. Because Customs made the initial decision to place the Persian lime entries on bypass and independently verified the entries' classification, Defendant may not now claim that Customs may avoid making a mistake of fact by the use of a workload reducing administrative process.

17.     If any of these Conclusions of Law shall more properly be Findings of Fact, they shall be deemed to be so.


_____
Evan J. Wallach, Judge


Dated: September 15, 2003
         New York, New York