Slip Op. 05-53

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: CARMAN, JUDGE

|  |  |  |
|---|---|---|
| | **:** | |
| **BROTHER INTERNATIONAL CORP.,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| v. | **:** | **Consol. Court No. 00-00006** |
| | **:** | |
| **UNITED STATES,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

[Judgment is entered for Defendant after trial on Customs classification of certain multifunction centers based upon all of the evidence, testimony, and papers submitted by the parties.]

*Barnes, Richardson & Colburn* (*Sandra Liss Friedman*, *Jennifer L. Morgan*, *Helena D. Sullivan*), New York, New York, for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Attorney-in-Charge, International Trade Field Office; *Bruce N. Stratvert*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Yelena Slepak*, Of Counsel, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, for Defendant.

Dated: April 29, 2005

## OPINION

**CARMAN, JUDGE:** The matter before this Court follows a bench trial held on February 9, 2005. At issue is whether Plaintiff's misclassification of certain multifunction centers ("MFCs"[1] or "subject merchandise") was due to mistake of fact or mistake of law. Plaintiff Brother

---

[1] For the purposes of this opinion, this Court will use the general term "MFCs" refer to all merchandise involved in this case.

International Corporation ("Plaintiff" or "Brother") challenges the United States Customs Service's, now organized as the United States Bureau of Customs and Border Protection ("Customs" or "Defendant"), denial of two protests to reliquidate thirty-eight entries of MFCs, claiming misclassification due to a mistake of fact, which is remedial under section 520 of the Tariff Act of 1930, 19 U.S.C. § 1520(c)(1) (2000). Defendant contends that Plaintiff's misclassification of the merchandise was a mistake of law, which is afforded no relief under section 1520(c)(1). Based on the findings of fact and conclusions of law set forth below, this Court enters final judgment in favor of Defendant.

## BACKGROUND

The merchandise at issue is MFCs with model numbers: MFC-4550, MFC-4550DS, MFC-6550MC, and MFC-7550MC. (Pl.'s Statement of Material Facts Not in Dispute Pursuant to R. 56(h) ("Pl.'s Statement") ¶ 4; Def.'s Resp. to Pl.'s Statement of Undisputed Facts ("Def.'s Resp.") ¶ 4.) All models at issue "employ a printing mechanism that uses laser technology." (Pl.'s Statement ¶ 8; Def.'s Resp. ¶ 8.) The MFCs were entered between June 24, 1996, and February 5, 1997, and liquidated between October 11, 1996, and May 23, 1997.[2] Customs Ruling HQ 228696 (Sept. 17, 2002); (Def.'s Mem. in Supp. of Its Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Mem.") at 3.)

---

[2] This Court notes that the subject merchandise was entered into the customs territory of the United States during the years of 1996 and 1997. During this period of import, the classifications and duty rates remained unchanged.

Prior to importation, Mitchell von Poederoyen ("Mr. von Poederoyen" or "broker"), a national account manager for Plaintiff's customs broker, FedEx Trade Networks,[3] classified the MFCs under subheading 9009.12.0000 of the Harmonized Tariff Schedule of the United States (1997) ("HTSUS"). (Pl.'s Statement ¶¶ 19, 35-37; Def.'s Resp. ¶¶ 19, 35-37.) Accordingly, Customs liquidated the entries at 3.7% *ad valorem*.[4]

In July 1997, Plaintiff requested a tariff classification ruling for the MFC-4550, one of the MFC models at issue in this case. Customs issued a ruling responding to Plaintiff's request. Customs Ruling NY B87982 (Aug. 4, 1997). In that ruling, Customs described the MFC-4550 as "a multi-function machine in one common housing that can perform, printing, copying, scanning, fax and PC fax functions" and found that "the printing function... dictates the principal function of [the] machine." *Id.* Based upon this finding, Customs concluded that the MFC-4550 should

---

[3] FedEx Trade Networks was formerly Tower Group International. (von Poederoyen Aff. of 6/20/03, ¶ 1.)

[4] HTSUS Subheading 9009.12.0000 provides:

| | |
|---|---|
| 9009 | Photocopying apparatus incorporating an optical system or of the contact type and thermocopying apparatus; parts and accessories thereof: |
| | Electrostatic photocopying apparatus: |
| *** | |
| 9009.12.00 | Operating by reproducing the original image via an intermediate onto the copy (indirect process) ......................................3.7% |

be classified under subheading 8471.60.6200, HTSUS,[5] "which provides for other laser printer units," and is a duty free provision. *Id.*

Subsequent to the 1997 ruling, Plaintiff submitted timely requests to reliquidate the subject entries pursuant to 19 U.S.C. § 1520(c)(1). Customs denied Plaintiff's requests for reliquidation. Plaintiff then filed timely protests of the denials. Protest No. 2701-99-100963 (Apr. 13, 1999); Protest No. 2704-99-100964 (Apr. 13, 1999). Plaintiff requested further review of the denied Protest Number 2704-99-100964. In a ruling, Customs affirmed the denial of the protest, finding that any misclassification was due to a mistake of law. HQ 228696. Thereafter, Plaintiff timely filed its summons in this Court to challenge the Customs decisions.

Plaintiff moved for summary judgment, and Defendant cross-moved for summary judgment. This Court denied both motions in Slip Op 04-67 issued on June 10, 2004, because this Court found a genuine issue of material fact. *Brother Int'l Corp. v. United States*, 342 F. Supp. 2d 1295, 1301 (CIT 2004). This Court held that further findings of fact were necessary to determine the extent of knowledge that Mr. von Poederoyen possessed about the physical

---

[5] HTSUS Subheading 8471.60.6200 states:

| 8471 | Automatic data processing machines and units thereof; magnetic or optical readers, machines for transcribing data onto data media in coded form and machines for processing such data, not elsewhere specified or included: |
|---|---|
| 8471.60 | Input or output units, whether or not containing storage units in the same housing: |
| *** | |
| 8471.60.62 | Other ...............................................................Free |

characteristics of the MFCs at the time of classification. This Court held a bench trial on February 9, 2005, to resolve this matter.

### STANDARD OF REVIEW

Jurisdiction of this Court is found under 28 U.S.C. § 1581(a) (2000). Although Custom's decisions are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2639(a)(1) (2000), this Court makes its determinations upon the basis of the record before it, not upon the record developed by Customs. *See United States v. Mead Corp.*, 533 U.S. 218, 233 n.16 (2001). Accordingly, this Court makes the following findings of fact and conclusions of law *de novo*. *See* 28 U.S.C. § 2640(a) (2000).

### ANALYSIS

At issue is whether a mistake of fact or mistake of law caused the misclassification of the MFCs. The distinction between a mistake of fact and a mistake of law is that a mistake of fact occurs in instances where either (1) the facts exist, but are unknown, or (2) the facts do not exist as believed. *G & R Produce Co. v. United States,* 381 F.3d 1328, 1333 (Fed. Cir. 2004) ("*G & R Produce II*"), *aff'g G & R Produce Co. v. United States*, 281 F. Supp. 2d 1323 (CIT 2003) ("*G & R Produce I*"). A mistake of law occurs when the facts are known but the legal significance of those facts is not appreciated. *G & R Produce II*, 381 F.3d at 1332.

When a mistake of fact occurs, courts have recognized that 19 U.S.C. § 1520(c)(1) provides a liberal scope of correction for the aggrieved party. *See G& R Produce II*, 381 F.3d at 1332-33 (citing *Aviall of Tex., Inc. v. United States*, 70 F.3d 1248, 1250 (Fed. Cir. 1995))*; cf. Fujitsu Compound Semiconductor v. United States*, 363 F. 3d 1230, 1235 (Fed. Cir. 2004) (referring to section 1520(c)(1) as a limited exception). This Court has found that "section

1520(c)(1) does not provide a remedy for all mistakes" but rather "only offers limited relief to the importer in the situations described in the statute." *G & R Produce I*, 281 F. Supp. 2d at 1330. Further, if a mistake is a mix of fact and law, then statutory relief is precluded. *Ford Motor Co. v. United States*, 157 F.3d 849, 857 (Fed. Cir. 1998) ("The statute contemplates that some errors that are prima facie correctable will also be 'errors in the construction of a law.' The statute precludes that subset of errors from correction.") Therefore, Plaintiff must meet the statutory burden in order to be granted relief.

Pursuant to this Court's Rule 52(a), "[i]n all actions tried upon the facts without a jury..., the court shall find the facts specially and state separately its conclusions of law thereon...." USCIT R. 52(a) (2002). Accordingly, findings of fact and conclusions of law are set forth below.

A. **Findings of Fact**

(1) **Uncontested Facts in Pretrial Order (Schedule C)**

The following uncontested facts were stipulated by parties in the pretrial order submitted to this Court on December 27, 2005.

1. Plaintiff is the importer of record of the subject merchandise and the party in interest in this litigation.

2. The court has jurisdiction of this action under 28 U.S.C. § 1581(a).

3. The action was timely commenced and all liquidated duties have been paid.

4. The merchandise in issue consists of MFCs whose model numbers are MFC-4550, MFC-4550DS, MFC-6550MC and MFC- 7550MC.

5. The MFC-4550 and MFC-4550DS are "five-in-one" MFCs consisting of a laser printer, copier, facsimile, scanner and PC fax.

6. The MFC-6550MC and MFC-7550MC are "six-in-one" MFCs consisting of a laser printer, copier, facsimile, scanner, PC fax and answering machine.

7. The invoice description for the entries in issue reads "multifunctional copier/printer/fax."

8. Customs issued binding ruling NY B87982 covering the MFC-4550 on August 4, 1997.

9. In NY B87982, Customs classified the MFC-4550 under subheading 8471.60. 6200, HTSUS.

10. In NY B87982, Customs stated: "The MFC-4550 is a multi-function machine in one common housing that can perform printing, copying, scanning, fax and PC fax functions. This machine appears to have evolved from prior laser printer technology developed by Brother Industries Ltd."

11. NY B876982 also noted: "In order to print, the MFC-4550 uses a print engine, which consists of a drum unit and fixing unit which acts to permanently adhere the chemicals which are contained in a toner cartridge to the paper. In order to fax, the machine uses the print engine together with a network control unit and the main board or control unit. When used as a copy machine, the device uses a print engine, CCD unit, and the main board."

**(2)     Uncontested Facts Established at Trial**

This Court finds, based upon the testimony and evidence presented, the following facts were uncontested and established at trial.

1. Engineers of the MFCs were located in Nagoya, Japan. (Trial Tr. at 29:5-6.)

2.      Brother first developed its laser print engine in the early 1990s, primarily for the laser printer but also used it in other products. (Trial Tr. at 33:3-9.)

3.      Without the laser print engine, Brother would not have had MFCs because the laser print engine is the core for the development of each of those machines. (Trial Tr. at 34:17-25, 35:2-4.)

4.      Brother's literature reflects equal importance of each function of the MFCs. (Trial Tr. at 93:8-14, 94:15-23.)

5.      Brother's purpose of line art was for the reseller to create advertisements. (Trial Tr. at 26:17-20, 27:6-7.)

**(3)     Court Found Facts**

At trial, Plaintiff claimed that the printer was the essential character of the subject merchandise and that its broker was not aware of that fact at the time of importation. This Court is persuaded by Plaintiff's claims regarding its broker's lack of knowledge. At trial, Plaintiff presented three witness: (1) Mr. Cummins, Brother's Director of Marketing in New Jersey at the time of importation; (2) Mr. Hatano, Brother's Manager of Import Department in New Jersey at the time of importation; (3) Mr. von Poederoyen, Brother's broker in California at the time of importation. This Court finds all three witnesses were credible and their testimony highly probative.

Based upon trial testimony and examination of the evidence, this Court finds that the primary function of the subject merchandise was its printing function. Mr. Cummins testified that the primary function of the MFCs was the printer, followed by the fax, and then the copier. (Trial Tr. at 92:2-4, 95:17-20.) Mr. Cummins explained that if the customer did not need the

printer, there was no need to buy the MFC because of the high price of the product. (Trial Tr. at 37:23-25, 92:12-20.) Mr. Cummins testified that a person who did not understand the development background, history and intended use of the MFCs would not be able to make a judgment on proper classification. (Trial Tr. at 100:4-11.) However, this Court finds that these facts were not relayed to Mr. Hatano, who testified that he did not have any product knowledge of the MFCs at the time of importation. (Trial Tr. at 115:20-21.)

During the time of the MFCs classification, Mr. Cummins testified that he did not have the opportunity to speak with Mr. Hatano or Mr. von Poederoyen regarding classification of the MFCs. (Trial Tr. at 105:9-13.) Mr. Hatano learned of the creation of MFCs from the marketing department's Mr. Nakao,[6] who requested a duty rate for this new product. (Trial Tr. 112:5-20.) Mr. Hatano testified that Mr. Nakao informed him that the MFCs had three functions incorporated in one machine [MFC] (Trial Tr. at 112:14-16); thus, Mr. Hatano only "knew that there were three-functions-in-one machine" and was not "aware [that the MFC was laser]" (Trial Tr. at 158:2-5). Mr. Hatano contacted Mr. von Poederoyen, Brother's broker, providing only the information that this was a three-functions-in-one machine and requesting a duty rate. (Trial Tr. at 113:11-20.)

This Court finds that neither Mr. Hatano nor Mr. von Poederoyen knew that the printer was the most important function at the time of classification. Mr. Hatano's request for a duty rate for the MFCs was "a puzzle" to Mr. von Poederoyen because he "had not come across

---

[6] This Court notes that Mr. Nakao and Mr. Cummins were both in the marketing department in New Jersey at the time of classification. It is unclear whether Mr. Nakao also knew that the MFCs' primary function was printing, but the record reflects that Mr. Nakao only informed Mr. Hatano that the MFC was a three-in-one machine when requesting a potential duty rate. (Trial Tr. at 112:14-16.)

anything like that before." (Trial Tr. at 165:8-10.) Upon Mr. von Poederoyen's request for more information about the MFCs before determinating classification, Mr. Hatano gave Mr. von Poederoyen line art, which differs in content and purpose from a product brochure.[7] (Trial Tr. at 114:14-20; 115:3-5, 28:9-12.) Mr. Hatano testified that he and Mr. von Poederoyen never discussed the principal function of the MFCs during classification discussions. (Trial Tr. at 129:20-24.) When determining proper classification, Mr. von Poederoyen understood that Brother planned to sell the MFCs "as all three [copier/printer/fax]" (Trial Tr. at 165:14-15), and he did not "have a sense of which function was more important" (Trial Tr. at 176:13-14).

This Court finds that Mr. von Poederoyen used the HTSUS General Rules of Interpretation ("GRI") to determine classification of the MFCs. (Trial Tr. at 165:16-25, 186:16-25, 187:2-11, 202:7-17.) When Mr. von Poederoyen told Mr. Hatano that HTSUS GRI 3(c)[8] would apply because the principal function could not be determined, Mr. Hatano was "happy that we used copier tariff because the duty rate is lower than fax machine." (Trial Tr. at 130:5-7.)

---

[7] Although Mr. von Poederoyen testified that line art is a draft product brochure (von Poederoyen Aff. of 6/20/03, ¶ 5), Mr. Cummins explained that line art for the subject merchandise was intended for the retailer to create advertisements. (Trial Tr. at 27:6-7.) Mr. Cummins explained that there is "dramatically more" information in product brochures than in the line art. (Trial Tr. at 28:9-12.)

[8] HTSUS GRI 3(c) (1997) states:

> 3. When, by application of rule 2(b) or for any other reason, goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows:
>
> ***
>
> (c) When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

This Court finds that Mr. von Poederoyen relied on Customs Ruling NY 897540 (May 9, 1994) ("Lanier Ruling")[9] to reinforce his classification decision. Although Mr. Hatano could not remember the details surrounding the procurement of the Lanier Ruling (Trial Tr. at 120:22-25, 121:2-19), Mr. von Poederoyen testified that he received the Lanier Ruling from Mr. Hatano after completing the GRI 3(c) analysis, which reinforced his decision to classify the MFC as a copier (Trial Tr. at 171:19-25, 172:2-9, 209:10-13, 220:21-25). Mr. von Poederoyen admitted that he "wasn't experienced enough to understand that there were other circumstances that played sort of key parts or pivotal roles in classifying items" when determining the MFCs' classification. (Trial Tr. at 211:24-25, 212:2-5.)

## B. Statutory Requirements

The relevant statute is 19 U.S.C. § 1520(c)(1), which states in pertinent part:

> Notwithstanding a valid protest was not filed, the Customs Service may, in accordance with regulations prescribed by the Secretary, reliquidate an entry or reconciliation to correct–
>
> > (1) a clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in electronic transmission, not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the Customs Service within one year after the date of liquidation or exaction;...

This statute lists five requirements that an importer must satisfy in order to be entitled to reliquidation of an entry made in error pursuant to section 1520(c)(1):

---

[9] The Lanier Ruling is a Customs ruling regarding the classification of the Lanier Corporation's multifunctional fax/copier/printer, which was classified by using GRI 3(c) since there was no principal function. The Lanier Ruling deemed the proper classification for the subject merchandise as tariff item 9009.12.0000. Mr. von Poederoyen believed Brother's MFCs to be similar to the Lanier merchandise. (von Poederoyen Aff of 6/20/04, ¶ 10.)

    (1)  clerical error, mistake of fact, or other inadvertence;

    (2)  not amounting to an error in the construction of a law;

    (3)  adverse to the importer;

    (4)  manifest from the record or established by documentary evidence; and

    (5)  brought to the attention of Customs within one year after the date of

    liquidation.

19 U.S.C. § 1520(c)(1) (2000). For the reasons discussed below, this Court finds that the first requirement is satisfied. However, because Plaintiff failed to establish the second requirement, this Court need not address the remaining requirements.

### (1)    Mistake of Fact

Plaintiff contends that a mistake of fact occurred. This Court has found a mistake of fact where "a party did not know the facts as they really were, and therefore lacked true knowledge of the ultimate character of the merchandise." *G & R Produce I*, 281 F. Supp. 2d at 1330. This Court has distinguished between a decisional mistake, which is correctly challenged under 19 U.S.C. § 1514 (protest), and an ignorant mistake, which is properly remedied under 19 U.S.C. § 1520(c)(1). *Universal Coop., Inc. v. United States*, 13 CIT 516, 518, 715 F. Supp. 1113, 1114 (1989). A decisional mistake occurs when a party chooses between two known, alternative sets of facts, while an ignorant mistake occurs when a party is unaware of the existence of the correct alternative set of facts. *Id.* This Court finds that the Plaintiff's broker believed all the functions were equally important, thus qualifying his mistake as ignorant since he was unaware of the existence of the correct alternative set of facts, namely that the printer was the most important function. Accordingly, this Court finds that the broker did not know that facts as they were really

were, specifically, that the printer was the essential character of subject merchandise during classification; and hence, a mistake of fact existed, which is properly remedied under 19 U.S.C. § 1520(c)(1). *See Taban Co. v. United States*, 21 CIT 230, 240, 960 F. Supp. 326, 334 (1997).

### (2)      Not Amounting to an Error in the Construction of a Law

The inquiry for relief does not end with the satisfaction of mistake of fact requirement. Section 1520(c)(1) further requires that this mistake must not amount to an error in the construction of a law.[10]  In other words, section 1520(c)(1) cannot be used to correct a mistake of law. *See Aviall of Tex.*, 70 F.3d at 1250.  The Court of Appeals for the Federal Circuit has directed that "for an error to be correctable, it must simultaneously qualify as at least one of the three enumerated types [clerical error, mistake of fact, or other inadvertence] *and* not qualify as an 'error in the construction of a law.'" *Ford Motor Co.*, 157 F.3d at 857.  The Defendant contends that this requirement is not satisfied.  This Court agrees.  Although this Court finds that the broker made a mistake of fact, some mistakes of fact may not justify reliquidation because they also amount to errors in the construction of a law.  *See G & R Produce II*, 381 F.3d at 1332 (citing *Ford Motor Co.*, 157 F.3d at 857).

### C.      Conclusions of Law

While this Court finds that he was mistaken as to the factual nature of the MFCs, Mr. von Poederoyen consciously employed the legal analysis of the GRI in determining classification of the MFCs.  (Trial Tr. at 186:16-25, 187:2-11.)  Mr. von Poederoyen testified:

---

[10] Courts have held that an error in the construction of a law is the same as a mistake of law. *Ford Motor Co.*, 157 F.3d at 859 (citing *Hambro Auto. Corp. v. United States*, 66 CCPA 113, 603, 603 F.2d 850 (1979)).

> [M]y understanding was that Brother was going to sell [the MFC]
> as all three [copier/printer/fax]. So I began to look in the
> harmonized tariff, under each classification and there didn't seem
> to be anything there specifically that incorporated the other two
> devices that were on this machine, so I went to the front of the
> harmonized tariff and worked under the general rules of
> interpretation, and 3(c) said that if it could be classified as more
> than one tariff number, that I would then go to the highest tariff
> number in the harmonized tariff.

(Trial Tr. at 165:14-25.) This Court finds that employing this legal analysis is a construction of

the law. It is well-settled that a decision to classify merchandise under a particular provision of

the HTSUS is a determination of law. *See Occidental Oil & Gas v. United States*, 13 CIT 244,

247 (1989) ("[a]n erroneous classification of imported merchandise is not remedial as a...

mistake of fact... under section 1520(c)(1).") This Court applies this established principle to a

broker's classification decision. At trial, Mr. von Poederoyen admitted to being inexperienced

with classification determinations at the time he classified the MFCs;[11] however, inexperience

with the law does not mitigate the result of an error in the construction of a law. This Court finds

that the broker's application of GRI principles to determine proper tariff classification of

merchandise is tantamount to the construction of a law. This Court holds that the broker's result

amounted to an error in the construction of a law.

The broker's reliance on the Lanier Ruling also amounted to a construction of the law.

While neither Mr. von Poederoyen nor Mr. Hatano could clearly remember when or how the

Lanier Ruling was produced during the course of their conversations, Mr. von Poederoyen

---

[11] Mr. von Poederoyen stated that classification of the MFCs was the first time that he recommended a classification for Plaintiff. (Trial Tr. at 178:16-21.) Mr. von Poederoyen later admitted, "[I] wasn't experience enough to understand that there were other circumstances that played sort of key parts or pivotal roles in classifying items." (Trial Tr. at 211:25, 212:2-4.)

testified that he felt "reinforced that [he] had made the right decision in classifying [the MFC] as a copier" after reading the Lanier Ruling. (Trial Tr. at 172:8-9; von Poederoyen Aff. of 6/20/03, ¶ 10.) Mr. von Poederoyen explained:

> ...the ruling appeared, and I went down to sort of the findings of it which said that it was a composite machine. And that Customs had used 3(c) to arrive at the classification and classified it as a copier. So since this was new territory for me, I sort of left reinforced that I had made the right decision in classifying it as a copier.

(Trial Tr. at 171:24-25, 172:2-9.) This Court finds that Mr. von Poederoyen's comparison with and reliance on the Lanier Ruling to affirm his legal conclusion falls under the ambit of mistake of law. Accordingly, this Court holds that it must deny relief under 19 U.S.C. § 1520(c)(1).

## CONCLUSION

In accordance with the foregoing findings of fact and conclusions of law, this Court concludes that the Plaintiff has not met its burden of proving the requirements to be granted relief under 19 U.S.C. § 1520(c)(1). Because this Court holds that Plaintiff made a mistake of law, judgment shall be rendered in favor of the Defendant.

                                                    /s/ Gregory W. Carman
                                                  Gregory W. Carman
                                                  Judge

Dated: April 29, 2005
New York, New York