S. YAMADA *v.* UNITED STATES (No. 4130)[1]

United States Court of Customs and Patent Appeals, May 31, 1938

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellant.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

[Oral argument April 11, 1938, by Mr. George R. Tuttle and Mr. Auster]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:[2]

The appellant has here appealed from the judgment of the United States Customs Court, Third Division, which overruled the appellant's protest against the refusal of the collector to reliquidate, on account of clerical error, an entry made by appellant at the port of San Francisco, under circumstances which will be hereinafter stated.

Our decision involves an interpretation, and a determination as to the proper application of certain provisions of sections 489 and 514 of the Tariff Act of 1922. The pertinent provisions of the two sections read as follows:

SEC. 489.   *   *   *   Duties shall not, however, be assessed upon an amount less than the entered value, except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined in this Act, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, and the collector shall liquidate the entry in accordance with the final appraisement.

SEC. 514. PROTEST.—All decisions of the collector   *   *   *   or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation when liquidation is made more than ten months after the date of entry, shall be final and conclusive upon all persons, unless the importer   *   *   *   shall   *   *   *   file a protest   *   *   *.

The entry involved silk goods and was made on April 22, 1927, and liquidated on March 27, 1933. In due time, the importer requested a reliquidation of the entry in order that it might be reliquidated on the reappraised value of the test case, which was the entered value less 10 per centum, representing a domestic consumption tax in Japan, and which 10 per centum had been included in the entered value of the instant importation under the so-called duress entry provision, section 489, *supra*. Along about the time that the entry involved here was made, there were also made, by the same customs

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

brokers who prepared the instant entry, a great number of so-called duress entries of similar goods. The entries were prepared and made by Hoyt, Shepston & Sciaroni, customs brokers. The duress entry made in the instant case contained a certificate which was in the following language:

It is certified that the entered value of the merchandise mentioned below is higher than the value as defined in the tariff act of 1922, and that the goods are so entered in order to meet advances by the appraiser in similar cases now pending on appeal for reappraisement    The similar cases now pending are entries 765862, 861443, and others, at the port of New York.

It is contended that the duty should be assessed on the basis of a value exclusive of the items specified; in other words, that the Japanese textile tax is not a part of dutiable value.

It will be noticed that there the "similar cases," which were stated as being "now pending," were "entries 765862, 861443 and others, at the port of New York." It developed that these entries so numbered did not involve the Japanese textile tax question. Just what questions these cases did involve is not stated or shown in this record nor do we think it a material matter.

At the trial of the protest before the Customs Court, the importer offered the testimony of two witnesses. Robert E. Blinn testified for the importer to the effect that he was a custom house broker employed by said Hoyt, Shepston & Sciaroni and that he was, at the time of taking the testimony, a member of that firm; that he prepared the involved entry; that near the date of the instant entry he also prepared almost a hundred similar entries of silk involving the Japanese textile tax question; that he had been in possession of slips or so-called duress certificate forms, like Exhibit 1 which was attached to the instant entry and that before making the involved entry, one Frank Lawrence, customs attorney, employed by the said brokerage firm, produced a new certificate which in the record is referred to as Illustrative Exhibit A, and reads as follows:

It is certified that the entered value of the merchandise mentioned below is higher than the value as defined in the tariff act of 1922, and that the goods are so entered in order to meet advances by the appraiser in similar cases now pending on appeal for reappraisement.   The similar cases now pending are entry 10788 (S. F.) of Dec. 17, 1926, Seattle Warehouse entry 404, of September 9, 1926, and entries 765862, 861443, 59011, and others, including reappraisement 11274–A, at the port of New York.   Note reappraisement circular 359, December 31, 1926.

It is contended that the duty should be assessed on the basis of a value exclusive of the items specified; in other words, that the Japanese textile tax is not a part of dutiable value.

It will be noted that in Illustrative Exhibit A the pending reappraisement cases were listed as being—

entry 10788 (S. F.) of Dec. 17, 1926, Seattle Warehouse entry 404, of September 9, 1926, and entries 765862, 861443, 59011, and others, including reappraisement 11274–A, at the port of New York.

92

It is conceded by all that some of the pending cases referred to in Illustrative Exhibit A were cases involving the so-called Japanese textile tax, one of them coming to this court on final reappraisement and the final appraised value being held not to include the Japanese tax. It is conceded in the instant case that had the certificate, Exhibit 1, contained the numbers set out in Illustrative Exhibit A, the collector would have liquidated upon a value which did not include the so-called Japanese textile tax.

Witness Blinn stated that his office had been using certificates like Exhibit 1 and that finally there was but one copy of the same left in the office. Upon this he marked "Sample. Do not use"; that some employee of the office saw that they were out of the supply of this certificate and typed a number of new ones and that when the entry at bar was made it was the intention of the party making the entry (Blinn) to attach the certificate last given him by Mr. Lawrence and that by mistake he attached the old one, although he had been instructed by Mr. Lawrence not to do so. Blinn admitted that he had written, in his own handwriting, on the incorrect certificate the figures and words "Yen 73.49"; that while it was his intention to attach the certificate that had the proper numbers so as to secure a refund and protect the importer's rights and while it was not his intention to attach the certificate which was no longer used, he would admit that he was "careless," though not "negligent"; that sometime thereafter when Mr. Lawrence was in the office and they were checking over the certificates they found some of these old certificates still there and they also discovered that he (Blinn) had been using the wrong certificates on some of the entries; and that on other entries he had used the new or correct certificates. The record shows that out of about a hundred certificates he used about thirty-five of the incorrect certificates while the remainder of the entries contained the new and proper certificates.

The trial court held as follows:

It thus appears that he had been furnished with a correct certificate. Moreover the decision of the First Division of this court on reappraisement in the test case, to wit, *Iwai & Co.* v. *United States*, had been handed down under date of December 22, 1926 (see Reap. Circ. 359), and said decision carried the notation of the entries then pending in the test case, to wit, entries 59011, 768869, 754262, and 62996. Therefore it cannot be said that the broker acted in the instant case with due diligence, because, not only had there been furnished to him a correct certificate, which he did not use but there was published information available to him on inquiry, giving more complete details than were in the certificate furnished him concerning the entries then pending. He acted in complete disregard of legal direction and in complete disregard of published information which would have enabled him to have made the correct certificate. Such facts do not establish clerical error.

It is our opinion the claim of clerical error cannot be maintained under the circumstances disclosed herein for the reason that the law states very clearly that

duties shall not "be assessed on an amount less than the entered value" except in a case where the importer certifies *at the time of entry* that the entered value is higher than the value as defined in this act, etc., section 489, Tariff Act of 1922.

This court must interpret the statute as enacted. The statute makes but one exception and that is that a duress certificate be filed at the time of entry. It makes no provision for establishing clerical error in connection therewith.

In the instant case, following decisions heretofore cited, we have held there was no duress certificate filed on entry. Therefore this court can give no relief in the situation.

There are two principal questions submitted here for our decision: First, is a clerical error made in preparing or filing a duress entry certificate such a clerical error as may form the basis for a protest under said section 514? Second, do the facts in the instant case show that a clerical error was made?

On the first question we think that the statute is broad enough to cover and was intended to cover clerical errors made by an entrant which are responsible for liquidating upon a wrong value, as well as clerical errors which bring about an erroneous ascertainment of the amount of duty on a correct value of imported merchandise. We see no reason why the statute should be construed, as it was by the trial court, as not affording a remedy for relief from the result of a clerical error made in a duress entry. In the instant case, the collector in his liquidation would have arrived at a less amount of duty if the proper and intended pending cases had been referred to in the duress certificate. We think the purpose of the clerical error provision of section 514, *supra*, was to enable the collector to reliquidate and thus correct injustices which would result from clerical errors and we see no reason advanced by anyone, and we know of none that can be advanced, that would warrant the conclusion that Congress did not intend the importer to have relief from clerical error, such as that here under consideration, when it is clearly shown to be a clerical error, and where the good faith required by the statute is affirmatively shown and unquestioned as it is here.

It will be noticed that section 489 extends the relief in duress cases to the entrant where his contention is subsequently sustained in pending cases and where it shall appear that the action of the importer on entry "was so taken in good faith, after due diligence and inquiry on his part." The facts in this case show no lack of diligence. Precaution was taken to get the correct numbers and the correct certificates, and they were on hand. Mistake, inadvertence, and carelessness resulted in the wrong certificate being on the entries.

The trial court found that there was no clerical error and that there was no diligence because the entrant did not use the correct numbers and acted in complete disregard of legal direction and in direct disregard of published information. The Government argues that because Mr. Blinn was "careless and indifferent," he cannot

now claim that he made a clerical error. It is our view that clerical error is usually the result of carelessness. The term "clerical error" has been defined by the courts in some instances involving legislation similar to that involved here. An examination of those decisions discloses that nothing was therein held that suggests that the error committed in making and filing the duress entry certificate in the instant case does not in law amount to a clerical error.

The case which is most in point and which we think correctly suggests the definition of "clerical error" in connection with the entry of imported merchandise is *Morimura Bros.* v. *United States*, 160 Fed. 280, where District Judge Hough, for the Circuit Court, Southern District of New York, had the following to say:

> The petitioners imported certain goods from Japan, which were incorrectly invoiced at a greater number of sen than was the actual value thereof, and also greater than the price paid therefor. The error was observed by the appraiser examining the invoice, and it was shown that the goods thus overvalued were staple articles, long regularly imported by the petitioners, and obtained by them, and easily obtainable, at the correct and lower rate. The protest was for clerical error, and the board overruled the same on the ground that the excessive duties exacted were due to petitioners' negligence or carelessness.

> Clerical error implies negligence or carelessness; but the question is: Whose is the negligence? If it is that of a "clerk, writer, or copyist," it is clerical error. Century Dictionary. The expression assumes that the mistake or negligence or carelessness is that of one engaged in the subordinate service of transcription, copying, or comparison; a labor not requiring original thought. It seems to me that the mistake in this case was clearly clerical, and, furthermore, that it is the sort of error correction of which is not harmful to the administration of the customs laws, and relief from which has been frequently granted by the board itself. * * *

The term "clerical error" is defined in Funk & Wagnalls New Standard Dictionary as follows:

> 1. A mistake in copying or writing.
> 2. *Law.* An error of inadvertence in a record or written instrument, which does not affect the intent.

It seems clear to us from the evidence that Mr. Blinn, acting in a clerical capacity, intended to carry out the instructions of Mr. Lawrence and to file the certificate which Mr. Lawrence last gave him. He intended to file a certificate which would show the new numbers. Through carelessness, inadvertence, and mistake, his proper intention was improperly executed. It was not the error of the party in interest or of Mr. Lawrence. It was the error of one upon whom no duty devolved to exercise original thought or judgment in determining what pending cases were to be listed. It was not Blinn's duty to select the correct pending case. This had been done for him by another whose instructions presumably he was required to follow, and he intended to do so.

We think the instant case shows inadvertence and mistake resulting in clerical error within the meaning of the controverted provision. See *United States* v. *Proctor Co.*, 5 Ct. Cust. Appls. 44, T. D. 34091.

The Government cites certain cases involving the question of manifest clerical error, and other cases involving negligence in making entries where the question of remission of additional duties was under consideration and the good faith of the applicant was being considered. It is so obvious that these cases are not in point as to call for no discussion here.

In the instant case, the importer introduced the testimony of Thomas J. Barry, who was the Deputy Collector of Customs who had the entry in charge at the port of San Francisco. He testified to the effect that he examined the entry involved including the duress certificate, and that before liquidation he satisfied himself "as to the good faith and diligence of the importers in making entries under so-called duress" and was satisfied as to such good faith and that the sole reason for liquidation and refusal to reliquidate was based upon the fact that the correct entry numbers did not appear in the certificate.

In this case there is no suggestion of fraud or perjury. On the contrary, the witnesses testified frankly to a plain statement of facts which is not suggestive of a situation where an entrant would wait until after the winning of a test case and then would seek to substitute in his certificate the number of the case which was won for the one which was lost or which did not involve the proper issue. The corroborating facts in the instant case not only show the good faith of the party making the entry but lend strength to the conclusion that a clerical error was unquestionably made.

We think that the protest should have been sustained. The judgment of the trial court is *reversed* and the cause is *remanded* for further proceedings not inconsistent with the views herein expressed.