Slip Op. 06-15

**UNITED STATES COURT OF INTERNATIONAL TRADE**

HYNIX SEMICONDUCTOR AMERICA,
INC.,

               Plaintiff,

               v.

UNITED STATES,

               Defendant.

Before: Richard W. Goldberg,
       Senior Judge

Consol. Court No. 03-00856

<u>**OPINION**</u>

[Hynix's motion for summary judgment granted. Customs' cross-motion for summary judgment is denied.]

Dated: January 26, 2006

<u>Willkie Farr & Gallagher</u> (<u>Miriam A. Bishop</u>) for Plaintiff Hynix Semiconductor America, Inc.

<u>Peter D. Keisler</u>, Assistant Attorney General; <u>Barbara S. Williams</u>, Attorney in Charge, International Trade Field Office; Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>James A. Curley</u>), for Defendant United States.

**GOLDBERG, Senior Judge**: In this action reviewing a denial of a protest under 19 U.S.C. § 1514, Plaintiff Hynix Semiconductor America, Inc. ("**Hynix**") moves the court, under USCIT R. 56, to enter summary judgment in its favor, and to order the Defendant U.S. Customs and Border Protection ("**Customs**") to reliquidate certain entries to correct an error made in liquidating those entries based on incorrect instructions issued by the U.S.

Department of Commerce ("**Commerce**").  Customs also moves for summary judgment, contending that it properly denied Hynix's reliquidation request, and that therefore this Court should dismiss the case.  See Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment ("**Customs Br.**").

The Court concludes that a Commerce employee made a "clerical error" and "mistake of fact" when transferring data from a computer printout into liquidation instructions, after which Customs followed the erroneous instructions and liquidated the goods at an incorrect rate, resulting in an adverse duty rate applied to Hynix's entries.  Because such an error was correctable under 19 U.S.C. § 1520(c) as a mistake of fact or clerical error not amounting to an error in the construction of a law, and because the failure to file a protest within ninety days of the liquidation of the entries is without legal consequence in this context, the Court grants Hynix's motion for summary judgment and denies Customs' cross-motion for the same.

## I.    BACKGROUND

This consolidated action[1] concerns 486 entries ("**the Entries**") of Dynamic Random Access Memory Semiconductors

---

[1]  The original Case No. 03-00856 involved 468 DRAMS entries.  On December 2, 2004, and pursuant to USCIT R. 42(a), the parties

("**DRAMS**") manufactured in the Republic of Korea ("**Korea**") and

exported to the United States.  The Entries arrived in the Port

of San Francisco during a period from May 1, 1998 to April 30,

1999, and were subject to Commerce's sixth administrative review

of an antidumping duty order then in place.[2]

Commerce, in its sixth administrative review, calculated

two types of antidumping rates: (1) a single weighted-average

dumping margin for each producer/exporter, which was calculated

using all U.S. sales by that producer/exporter, and (2) an

importer-specific assessment rate, which was calculated using

only U.S. sales by that same producer/exporter to certain

specific importers.  See Final Results, 65 Fed. Reg. at 68978.

Commerce determined that the weighted-average dumping margin for

producer/exporter Hyundai Electronics Industries Co., Ltd.

("**Hyundai Electronics**") was 2.30 percent.  Id.  Commerce also

calculated an importer-specific rate of 1.57 percent for Hyundai

Electronics America, Inc. ("**Hyundai Electronics America**").[3]  See

---

consented to the consolidation of a subsequent case, filed in
August 2004, which involved additional 18 DRAMS entries.

[2]  See Dynamic Random Access Memory Semiconductors of One Megabit
or Above from the Republic of Korea, 65 Fed. Reg. 68976 (Dep't
Commerce Nov. 15, 2000) (final results of administrative review)
("**Final Results**").

[3]  In October 1999, Hyundai Electronics acquired LG Semicon Co.,
Ltd., another Korean DRAMS manufacturer.  The resultant entity

Tr. of Paige Rivas Dep. ("**Rivas Dep.**") 32-33.  The actual

importer-specific rate was not published in the Federal

Register, but the Final Results apprised readers of its

existence:

> The Department shall determine, and the Customs Service
> shall assess, antidumping duties on all appropriate
> entries.  The Department will issue appraisement
> instructions directly to the Customs Service. Where the
> importer-specific assessment rate is above de minimis, we
> will instruct Customs to assess antidumping duties on that
> importer's entries of subject merchandise.
>
> These final results of review shall be the basis for the
> assessment of antidumping duties on entries of merchandise
> covered by this review.  For duty-assessment purposes, we
> calculated importer-specific assessment rates by
> aggregating the dumping margins calculated for all U.S.
> sales to each importer and dividing this amount by the
> total estimated entered value reported for those sales.

Final Results, 65 Fed. Reg. at 68978.

Both the weighted-average dumping margin for Hyundai

Electronics and the importer-specific assessment rate for

Hyundai Electronics America were derived from the data compiled

during the administrative review, as entered into a specially

designed computer program using Statistical Application

Software.  See Hynix's Statement of Material Facts Not in

Dispute ¶ 9 ("**Hynix's Statement of Facts**"); see also Defendant's

---

was renamed Hynix Semiconductor, Inc.  Hyundai Electronics
America, which was a wholly owned subsidiary of the former
Hyundai Electronics, was similarly designated Hynix
Semiconductor America, Inc.

Response to Plaintiff's Statement of Material Facts ("**Customs'**

**Statement of Facts**") ¶ 9 (admitting the same).  In Commerce, the

computer program is known as the "SAS Program."  See Rivas Dep.

15:9-16.  The SAS Program produces a computer printout ("**SAS**

**Printout**") that lists the duty rates for all relevant exporters

and producers, as well as the importer-specific rates where

appropriate.  See Hynix's Statement of Facts ¶ 10.  For the

sixth administrative review, both the weighted-average dumping

margin for Hyundai Electronics and the importer-specific

assessment rate for Hyundai Electronics America appeared on the

SAS Printout, as well as on the computer display for the SAS

Program, but on different pages.  See Rivas Dep. 31:14-33:23;

see also Hynix's Statement of Facts ¶ 12; Customs' Statement of

Facts ¶ 12 (admitting the same).

Notwithstanding the routine unfolding of events up to that

point, Commerce's liquidation instructions, prepared by Ms.

Paige Rivas ("**Rivas**"), instructed Customs as follows: "For all

shipments of DRAMS from Korea Produced by Hyundai, and imported

by Hyundai Electronics America, Inc., and entered or withdrawn

from warehouse for consumption during the period 05/01/1998

through 04/30/1999, assess an antidumping liability of 2.30

percent of the entered value."  Commerce Dep't Message 1260205

(Sept. 17, 2001) (Ex. 2 of Rivas Dep.) (emphasis added).

Customs liquidated the Entries at 2.30 percent in a manner consistent with Commerce's instructions, which had erroneously indicated the weighted-average dumping margin instead of the importer-specific rate that (1) was noted in the Final Results, (2) resulted from the SAS Program, and (3) appeared on the SAS Printout.

The erroneous instructions resulted from Rivas' incorrect transfer of data from the SAS Printout to the liquidation instructions she prepared for Customs. See Rivas Dep. 32:7-34:12. Rivas consulted the SAS printout, but failed to notice the importer-specific rate for Hyundai Electronics America. Id. 34:3-9. Indeed, Rivas does not recall if she examined that page at all. Id. 34:10-12. Neither does Rivas recall if she consulted the Final Results published in the Federal Register, which would have referenced the importer-specific rate. Id. 35:9-11.

Some time after Customs liquidated the Entries, Hynix's counsel contacted Rivas to point out that the liquidation instructions mistakenly directed Customs to assess a 2.30 percent dumping margin for goods imported by a company with an importer-specific rate of 1.57 percent. Id. 17:14-20:17. After that conversation, Rivas reexamined the SAS Printout and determined that the results of the SAS Program contemplated two

distinct rates.  Id.  Rivas was unaware of the distinction between weighted-average dumping margins and importer-specific rates, so she undertook some general research in the dumping manual and other source materials.  Id.

After realizing her error, Rivas corrected and replaced the previous liquidation instructions on March 15, 2002.  Hynix's Statement of Facts ¶ 26; Customs' Statement of Facts ¶ 26 (admitting the same).  The relevant portions of the second set of liquidation instructions provided as follows:

> RE: Correction and Replacement of MSG. 1260205 Re Liquidation Instructions For DRAMS from Korea Produced by Hyundai Electronics Industries (A-580-812-02)
> ...
> 1. This is a correction of Message 1260205 on 09/17/2001. The assessment rate in Paragraph 1 of the above-referenced message is incorrect.  The correct message, with the correct assessment rate, is in Paragraph 2.
> 2. For all shipments of DRAMS from Korea Produced by Hyundai, and imported by Hyundai Electronics America, Inc., and entered or withdrawn from warehouse for consumption during the period 05/01/1998 through 04/30/1999, assess an antidumping liability of 1.57 percent of the entered value.

Commerce Dep't Message 2074203 (Mar. 22, 2002) (Ex. 3 of Rivas Dep.).

After Commerce issued the corrected liquidation instructions, Hynix filed protests under 19 U.S.C. § 1514, importuning Customs (1) to correct the error made in assessing antidumping duties on Hynix, and (2) to apply the correct

importer-specific assessment rate as required by the <u>Final</u>

<u>Results</u>.  <u>See</u> Hynix's Statement of Facts ¶ 27; Customs'

Statement of Facts ¶ 28.  Customs granted Plaintiff's protests

and reliquidated at 1.57 percent any of Hynix's entries whose

liquidation date fell within ninety days of the date of protest.[4]

<u>See</u> Hynix's Statement of Facts ¶ 28; Customs' Statement of Facts

¶ 28.  However, since the Entries were liquidated more than 90

days before the protest, Hynix could not file a protest with

respect to the Entries, and filed reliquidation requests under

19 U.S.C. § 1520(c)[5] for the two sets of the Entries on April 22,

2002 and June 27, 2002, respectively.  <u>See</u> Hynix's Statement of

Facts ¶ 29.

On June 18, 2002 and September 25, 2002, Customs denied

those applications on the grounds that no clerical error,

mistake of fact or inadvertence occurred on the part of Customs,

and therefore relief under 19 U.S.C. § 1520(c) was unavailable.

---

[4]  Prior to a 2004 amendment extending the statute of limitations to 180 days, 19 U.S.C. § 1514 allowed an importer ninety days to protest one of seven types of "decision[s] of the Customs Service . . . ."  <u>See</u> 19 U.S.C. § 1514 (1999).  Under 19 U.S.C. § 1520(c), however, an importer benefits from a longer one-year statute of limitations to file a reliquidation request to correct the following three types of errors: clerical errors, mistakes of fact, and other inadvertences.  <u>See</u> <u>id.</u> § 1520(c).

[5]  In 2004, Congress repealed 19 U.S.C. § 1520(c).  <u>See</u> Pub. L. 108-429, title II, § 2105, 118 Stat. 3598 (2004).  Since, however, the Entries arrived prior to the repeal, the Court notes that the former 19 U.S.C. § 1520(c) governs this case.

See Customs Br. at 6-7.  Hynix filed protests under 19 U.S.C.
§ 1514 contesting the denial of its reliquidation requests on
September 3, 2002, and November 27, 2002, respectively.  Hynix's
Statement of Facts ¶ 30; Customs' Statement of Facts ¶ 30.  In
response, Customs reiterated its contention that reliquidation
was inappropriate because Hynix "has not shown with documentary
evidence, nor is it manifest from the record that a clerical
error, mistake of fact, or other inadvertence occurred in the
entry, liquidation, or other customs transaction . . . ."  HQ
229808 at 6 (Apr. 30, 2003), available at 2003 U.S. CUSTOM HQ
LEXIS 215.  Customs also stated that its role in assessing the
2.30 percent antidumping duty was merely ministerial, and
claimed it was merely following instructions, and therefore
could not be said to have committed an error.  Id. at 4-5.
Ultimately, Customs denied both protests.  See Hynix's Statement
of Facts ¶ 30; Customs' Statement of Facts ¶ 30 (admitting the
same).  Hynix commenced proceedings in this Court on November
24, 2003.

## II.  <u>JURISDICTION</u>

"Without jurisdiction the court cannot proceed at all in
any cause."  Steel Co. v. Citizens for a Better Env't, 523 U.S.
83, 94 (1998) (quoting Ex parte McCardle, 74 U.S. 506, 514
(1868)).  The jurisdiction of the U.S. Court of International

Trade is laid out in 28 U.S.C. §§ 1581-83.  28 U.S.C. § 1581(a) grants the Court exclusive jurisdiction to hear "any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]."  28 U.S.C. § 1581(a) (1999). 19 U.S.C. § 1515 outlines the procedures Customs must follow in ruling on a protest filed pursuant to 19 U.S.C. § 1514.  Hynix, as noted supra, filed such a protest to challenge Customs' earlier denial of its 19 U.S.C. § 1520(c) reliquidation request. That protest was properly initiated under 19 U.S.C. § 1514, which specifically enumerates "the refusal to reliquidate an entry under section 1520(c)" as a protestable "decision of the Customs Service."  19 U.S.C. § 1514 (1999).

Since Hynix now contests Customs' denial of its protest of Customs' earlier denial of its reliquidation request, the Court has 19 U.S.C. § 1581(a) jurisdiction over this case.[6]

---

[6]  This case is distinguishable from the recent line of cases that have found residual jurisdiction, under 28 U.S.C. § 1581(i), to hear actions relating to liquidation instructions that were at odds with Commerce determinations.  See Shinyei Corp. of Am. v. United States, 355 F.3d 1297 (Fed. Cir. 2004); Mitsubishi Elecs. Am. v. United States, 44 F.3d 973, 977 (Fed. Cir. 1994).  Implicit in the exercise of residual jurisdiction is the absence of an alternative remedy under 28 U.S.C. § 1581(a)-(h).  See Consol. Bearings Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003).  In this case, the plaintiff availed itself of the administrative procedures that were available to it by requesting reliquidation under 19 U.S.C. § 1520(c).  The Mitsubishi and Shinyei plaintiffs, however, had no recourse to reliquidation because there was no "clerical

### III. <u>STANDARD OF REVIEW</u>

"[S]ummary judgment is proper 'if the pleadings [and the discovery materials] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (<u>quoting</u> Fed. R. Civ. P. 56(c)).[7] "In ruling on cross-motions for summary judgment, the court must determine if there exist any genuine issues of material fact and, if there are none, decide whether either party has demonstrated its entitlement to judgment as a matter of law." <u>Am. Motorists Ins. Co. v. United States</u>, 5 CIT 33, 36 (1983).

Customs' denial of Hynix's protests is subject to the Court's de novo review under 28 U.S.C. § 2640(a)(1). <u>See, e.g.,</u>

---

error, mistake of fact, or other inadvertence" at issue in those cases. Neither did those plaintiffs have access to other modes of redress, such as 19 U.S.C. § 1514 or the reviewable determinations listed in 19 U.S.C. § 1516a(a)(2)(B), which would have triggered subject matter jurisdiction under 28 U.S.C. § 1581(c). Because those plaintiffs had no administrative remedies that could lead to judicial review in this Court, they could invoke residual jurisdiction. Conversely, in a case involving a transparent clerical error that an importer can correct under 19 U.S.C. § 1520(c), residual jurisdiction is unavailable.

[7] "When the Court's rules are materially the same as the [Federal Rules of Civil Procedure ("FRCP")], the Court has found it appropriate to consider decisions and commentary on the FRCP in interpreting its own rules." <u>Former Employees of Tyco Elec. v. United States Dep't of Labor</u>, 27 CIT ___, ___, 259 F. Supp. 2d 1246, 1251 (2003).

Chevron Chem. Co. v. United States, 23 CIT 500, 500, 59 F. Supp.
2d 1361, 1362-63 (1999).

## IV.  <u>DISCUSSION</u>

This case concerns the application of Section 520(c) of the
Tariff Act of 1930, codified at 19 U.S.C. § 1520(c).  The
relevant portion of that statute reads as follows:

(c)  Reliquidation of entry or reconciliation

Notwithstanding a valid protest was not filed, the
Customs Service may . . . reliquidate an entry or
reconciliation to correct—

(1)  <u>a clerical error, mistake of fact, or other
inadvertence</u>, whether or not resulting from or
contained in electronic transmission, <u>not amounting to
an error in the construction of a law</u>, adverse to the
importer and manifest from the record or established
by documentary evidence, <u>in any</u> entry, <u>liquidation</u>, or
other customs transaction, when the error, mistake, or
inadvertence is brought to the attention of the
Customs Service within one year after the date of
liquidation or exaction . . . .

19 U.S.C. § 1520(c)(1) (1999) (emphasis added).

Hynix claims it filed a proper reliquidation request
because both Customs and Commerce made correctable "mistake[s]
of fact" that did not amount to "mistake[s] in the construction
of a law . . . ."   Id.  Customs' rebuttal is fourfold.  First,
Customs claims it committed no error at all.  Second, Customs
argues that Commerce errors are per se excluded from the ambit
of 19 U.S.C. § 1520(c).   Third, Customs argues Commerce's

error, if any, was a "mistake in the construction of a law" and irremediable under 19 U.S.C. § 1520(c). Customs' fourth argument—to which the Court turns as a preliminary matter—is that Hynix is prevented from invoking 19 U.S.C. § 1520(c) because it failed to execute "due diligence," Customs Br. at 20, by not utilizing the available protest proceedings under 19 U.S.C. § 1514.

**A.    The Effect of Hynix's Failure to Bring a Timely Protest Action Under 19 U.S.C. § 1514**

The Entries were liquidated over a period spanning from December 21, 2001 to February 15, 2002. Under 19 U.S.C. § 1514 as then in effect, an importer had ninety days[8] from the date of liquidation to file a protest challenging a "decision of the Customs Service . . . ."[9] Therefore, with respect to the

---

[8] A protest was timely if it was filed with Customs "within ninety days but not before . . . notice of liquidation or reliquidation . . . ." 19 U.S.C. § 1514(c)(3) (1999).

[9] Prior to the 2004 amendment, 19 U.S.C. § 1514 provided in pertinent part as follows:

   (a)  Finality of decisions; return of papers
     [Subject to the listed exceptions, including 19 U.S.C. § 1520(c),] decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to-

       (1)  the appraised value of merchandise;
       (2)  the classification and rate and amount of duties chargeable;

earliest of the Entries, Hynix had ninety days—or until March 21, 2002—to file a timely 19 U.S.C. § 1514 protest.

When Commerce issued new liquidation instructions on March 15, 2002, Hynix immediately filed protests. Customs granted the protests with respect to those entries that occurred in the period extending from ninety days before the filing until the filing date itself. Customs denied the protest, as time barred, with respect to the earlier entries. Then Hynix, on April 22, 2002 (covering the original 468 entries) and June 27, 2002 (covering the additional 18 entries), filed the 19 U.S.C. § 1520(c) reliquidation requests with which this case is concerned. The Entries were liquidated over a period spanning from December 21, 2001 to February 15, 2002. Because Hynix filed its reliquidation requests within one year from the "date

---

>           (3)  all charges or exactions of whatever character
>                within the jurisdiction of the Secretary of the
>                Treasury;
>             . . .
>           (5)  the liquidation or reliquidation of an entry,
>             . . .
>           (7)   the refusal to reliquidate an entry under
>                section 1520(c) of this title;
>
> shall be final and conclusive upon all persons . . . unless
> a protest is filed in accordance with this section, or
> unless a civil action contesting the denial of a protest,
> in whole or in part, is commenced in the United States
> Court of International Trade . . . .
> 19 U.S.C. § 1514(a) (1999).

of liquidation or exaction," 19 U.S.C. § 1520(c) (1999), its requests, unlike its protests, were timely.

Customs argues that Hynix "failed here to exercise due diligence by filing timely protests against liquidation of the entries in issue, and relied upon § 1520(c)(1) as a substitute for a protest under § 1514." Customs Br. at 20. The general rule is that no provisions of 19 U.S.C. § 1520(c) can be employed to excuse the failure to satisfy the requirements of 19 U.S.C. § 1514. See Fujitsu Compound Semiconductor, Inc. v. United States, 363 F.3d 1230, 1234-35 (Fed. Cir. 2004); ITT Corp. v. United States, 24 F.3d 1384, 1387 n.4 (Fed. Cir. 1994). Absent the limited exceptions enumerated in 19 U.S.C. § 1514 (including reliquidations based on clerical errors, mistakes of fact, and other inadvertences under 19 U.S.C. § 1520(c)), unless a valid protest is filed within ninety days from the date of liquidation, the liquidation of certain imported merchandise becomes final and conclusive on all persons. Fujitsu, 363 F.3d at 1234-35; Degussa Can. Ltd. v. United States, 19 CIT 864, 867, 889 F. Supp. 1543, 1547 (1995); see also 19 U.S.C. § 1514(c)(3) (1999).

If a litigant fails to protest, within ninety days, a Customs decision as to one of the categories of decisions enumerated in 19 U.S.C. § 1514, that litigant will, in most

cases, be unable to raise the claim in a reliquidation request. However, the bipartite statutory scheme that Congress created explicitly contemplates 19 U.S.C. § 1520(c) as an exception to the "general rule" discussed in Fujitsu and ITT Corp. See 19 U.S.C. § 1514(a) (1999) (declaring all Customs decisions to be final "[e]xcept as provided in" inter alia "section 1520 of this title").

There is no independent requirement that a plaintiff engage in "due diligence," Customs Br. at 20, by checking for mistakes and errors that result in liquidation of merchandise. Congress provided a longer statute of limitations for one set of challengeable administrative acts, and the mere existence of a shorter statute of limitations as to another set of conceptually related challengeable acts does not create any obligation to exercise a special "due diligence" and care. If 19 U.S.C. § 1520(c) provides a mode of redress to correct the errors alleged by Hynix, then Hynix need only satisfy the requirements of that statute, and validly invoke the protest and judicial review procedures of 19 U.S.C. § 1514 to challenge Customs' refusal to reliquidate under 19 U.S.C. § 1520(c) to obtain its relief.

**B.   Application of 19 U.S.C. § 1520(c) to the Entries**

Under 19 U.S.C. § 1520(c), an importer may not obtain reliquidation of an entry based on any "error in the construction of the law," and must instead obtain redress under 19 U.S.C. § 1514.  Courts have interpreted the phrase "error in the construction of a law" as interchangeable with its more familiar analogue, "mistake of law."  See Brother Int'l Corp. v. United States, 29 CIT ___, ___ n.10, 368 F. Supp. 2d 1345, 1351 (2005) (citing Ford Motor Co. v. United States, 157 F.3d 849, 859 (Fed. Cir. 1998)).

Sometimes, an error that qualifies as a "clerical error, mistake of fact, or other inadvertence" may not justify reliquidation because it is also an error of law: "the statute contemplates that some errors that are prima facie correctable will also be 'errors in the construction of a law.'"[10]  Ford Motor Co., 157 F.3d at 857 (quoting 19 U.S.C. § 1520(c)).

---

[10]  But see Hambro Auto. Corp. v. United States, 66 C.C.P.A. 113, 118, C.A.D. 1231, 603 F.2d 850, 853 (1979) ("A mistake of fact is any mistake except a mistake of law.") (quoting C.J. Tower & Sons of Buffalo, Inc. v. United States, 68 Cust. Ct. 17, 22, 336 F. Supp. 1395, 1399 (1972), aff'd, 61 C.C.P.A. 90, C.A.D. 1129, 499 F.2d 1277 (1974)).  Obviously, Ford Motor Co. and Hambro are in conflict.  If a mistake of fact is defined as any mistake other than a mistake of law, it would be impossible that, as Ford Motor Co. suggests, some mistakes of fact are also mistakes of law.  But see Brother Int'l, 29 CIT at ___, 368 F. Supp. 2d at 1351 (relying on Ford Motor Co. to find that importer made a

A mistake of law occurs "where the facts are known but their legal consequences are not, or are believed to be different than they really are." Century Imp's, Inc. v. United States, 205 F.3d 1308, 1313 (Fed. Cir. 2000). A mistake of fact occurs "where either (1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to [exist]." Hambro, 66 C.C.P.A. at 119, 603 F.2d at 855; see also G&R Produce Co. v. United States, 381 F.3d 1328, 1333 (Fed. Cir. 2004).

In attempting to refine the distinction between types of mistakes under 19 U.S.C. § 1520(c), this court has distinguished between "decisional mistakes," which must be challenged under 19

---

mistake of fact that was also an error in the construction of the law and outside the scope of 19 U.S.C. § 1520(c)).

Yet another difficulty arises from Hambro's categorization of all mistakes as either mistakes of law or mistakes of fact. If a "clerical error" qualifies as neither a mistake of law nor a mistake of fact, it may not, under the Hambro framework, be considered a mistake at all. It stretches the imagination to conjure a clerical error that is not a mistake, but such a scenario is possible according to Hambro. This problem results from the Hambro court's use of the phrase "any mistake," which directs litigants' attention away from the three defined statutory categories laid out in 19 U.S.C. § 1520(c). Instead, the Court reads Ford Motor Co. as overshadowing Hambro's binary taxonomy of "mistakes." After Ford Motor Co., a court is charged with two inquiries: first, it decides whether the alleged error falls into one of the three prima facie categories of correctable errors; and second, it decides whether a prima facie correctable error is nevertheless uncorrectable because it is also a mistake of law.

U.S.C. § 1514, and "ignorant mistakes," which are remediable under 19 U.S.C. § 1520(c).  See G&R Produce Co. v. United States, 27 CIT ___, ___, 281 F. Supp. 2d 1323, 1331 (2003); Prosegur, Inc. v. United States, 25 CIT 364, 370, 140 F. Supp. 2d 1370, 1378 (2001); Universal Coops., Inc. v. United States, 13 CIT 516, 518, 715 F. Supp. 1113, 1114 (1989).  Decisional mistakes are mistakes of law and occur when "a party [makes] the wrong choice between two known, alternative sets of facts." Universal Coops., 13 CIT at 518, 715 F. Supp. at 1114.  On the other hand, an ignorant mistake occurs where "a party is unaware of the existence of the correct alternative set of facts."  Id. "In order for the goods to be reliquidated under 1520(c)(1), the alleged mistake of fact must be an ignorant mistake."  Prosegur, 25 CIT at 370, 140 F. Supp. 2d at 1378.

The statute also contains a materiality requirement.  See 19 U.S.C. § 1520(c) (1999) (requiring that an error must be "adverse to the importer" in order to justify reliquidation under 19 U.S.C. § 1520(c)).  In the classification context, for example, courts have addressed the materiality requirement extensively.  See, e.g., Degussa Can. Ltd. v. United States, 87 F.3d 1301, 1304 (Fed. Cir. 1996) ("[A] mistake of fact . . . is a factual error that, if the correct fact had been known, would have resulted in a different classification.") (emphasis added);

Xerox Corp. v. United States, Slip Op. 04-113, at 10, 2004 Ct.
Int'l Trade LEXIS 112, at *14 (CIT Sept. 8, 2004).  The
unambiguous language of the statute requires that courts apply
the materiality requirement to all 19 U.S.C. § 1520(c) cases,
even those in contexts where, as in this case, the case law is
less developed.

    Hynix alleges two different mistakes of fact that, it
argues, are correctable under 19 U.S.C. § 1520(c).  First, Hynix
claims Customs made a mistake of fact by liquidating the Entries
at the incorrect rate.  See Hynix's Memorandum of Points and
Authorities in Support of Plaintiff's Motion for Summary
Judgment at 20.  Second, it contends Commerce made a mistake
when Rivas incorrectly transferred data from the SAS Program and
the SAS Printout to the template liquidation instructions.  See
Plaintiff's Brief in Reply to Defendant's Opposition to
Plaintiff's Motion for Summary Judgment and in Opposition to
Defendant's Cross-Motion for Summary Judgment ("**Hynix Reply**") at
13-14.  Customs, on the other hand, argues in response that (1)
Customs itself made no cognizable "mistake of fact" or
correctable error; and (2) Rivas' failure to take into account
the importer-specific assessment rate applicable to Hyundai
Electronics America amounts to "an error in the construction of

a law," which would foreclose reliquidation relief under 19

U.S.C. § 1520(c).  See Customs Br. at 9-16.

> **1.  *Customs' Liquidation of the Entries at an Incorrect
> Rate Was Not a Correctable Mistake of Fact Because It
> Fails the Materiality Test***

Hynix's contention that Customs committed a mistake of fact

because it followed erroneous instructions from Commerce fails

to take into account the materiality requirement, and therefore

betrays a misunderstanding of the "ignorant mistake" case law.

As discussed supra, an ignorant mistake occurs when "a party is

unaware of the existence of the correct alternative set of

facts."  Universal Coops., 13 CIT at 518, 715 F. Supp. at 1114.

Equally critical, however, is the requirement that the ignorant

party would have acted differently had it known the truth about

the mistaken facts.  See Degussa, 87 F.3d at 1304.

Thus, in Xerox Corp., the court found a mistake of fact

where an employee of an importer, who was responsible for

entering merchandise, mischaracterized certain entries as

"photocopying apparatus"  (subheading 9009.12.00 of the

Harmonized Tariff Schedule of the United States ("**HTSUS**"))

instead of "laser printers" (subheading 8471.60.6100 of the

HTSUS), which were entitled to a lower tariff rate.  Xerox

Corp., Slip. Op. 04-113, at 4, 2004 Ct. Int'l Trade LEXIS 112,

at *4-*5.  In reality, the merchandise "could be connected to a

computer, receive data, and print it out and . . . could not make a photocopy," and was therefore properly categorized as "laser printers." Id. at 5, 2004 Ct. Int'l Trade LEXIS 112, at *8. The employee, however, was unfamiliar with the merchandise and relied on erroneous invoice descriptions. Id. The court found that since the employee "had the mistaken belief that the merchandise was other than what it was, it is clear that [his] reliance on inaccurate merchandise descriptions on the invoices constitutes a mistake of fact." Id. at 11, 2004 Ct. Int'l Trade LEXIS 112, at *16.

Similarly, in G&R Produce, the U.S. Court of Appeals for the Federal Circuit ("**Federal Circuit**") found a mistake of fact when a Customs official, "as a result of not knowing the correct botanical designation for Persian limes . . . incorrectly believed that 'Citrus aurantifolia' encompassed all limes and therefore, misclassified [plaintiff's] goods under [the HTSUS]." G&R Produce, 381 F.3d at 1333. The correct designation of Persian limes was "Citrus latifolia" and corresponded to a lower rate under the HTSUS. The relevant "fact" in G&R Produce was that the category of "Citrus latifolia" existed. The Customs agent was ignorant of that fact, and indeed believed another fact—that "Citrus aurantifolia" applied to all limes—to be true. Cf. C.J. Tower & Sons, 61 C.C.P.A. at 96, 499 F.2d at 1282

(broker's ignorance of duty-free designation "emergency war material" was a mistake of fact).  The Federal Circuit found that a mistake of fact, not amounting to a mistake in the construction of a law, existed.  See G&R Produce, 381 F.3d at 1333.

Both G&R Produce and Xerox Corp. involved mistaken perceptions of facts that were constitutive of the classification process performed by Customs.  In both cases, the mistakes related to vital components of classification: in G&R Produce, a mistake as to what categories existed, and in Xerox Corp., a mistake as to the relevant properties of merchandise on which basis the classification depended.  In this case, however, Hynix alleges the mistake is Customs' failure to take into account potentially relevant information that, while important, is unlikely to have affected Customs' action.

Hynix overstates Customs' discretion when acting pursuant to Commerce's instructions.  When Customs follows liquidation instructions issued by Commerce subsequent to an administrative review, it is executing a purely ministerial duty over which it possesses no discretion.  See Mitsubishi, 44 F.3d at 977 ("Customs merely follows Commerce's instructions in assessing and collecting duties. . . . Customs cannot modify . . . [Commerce's] determinations, their underlying facts, or their

enforcement.") (quotation marks omitted); cf. 19 C.F.R. § 351.212 (2005) ("The Secretary [of Commerce] then will instruct the Customs Service to assess antidumping duties by applying the assessment rate to the entered value of the merchandise."); 19 U.S.C. § 1675(a)(3)(B) (1999) ("If [Commerce] orders any liquidation of entries pursuant to [an administrative] review . . . such liquidation shall be made promptly and, to the greatest extent practicable, within 90 days after the instructions to Customs are issued.").

A more apt analogy to this case is Degussa, where the Federal Circuit refused to assume that Customs would have treated an entry differently had it been aware of the actual facts relating to that entry. There, the importer introduced two entries of automotive emission catalysts into the United States through the ports of Detroit and Buffalo. See Degussa, 87 F.3d at 1302. Both times, Customs officials classified the merchandise as "other parts and accessories of motor vehicles" under subheading 8708.99 of the HTSUS, which corresponded to a duty of 3.1 percent. Id. The importer objected, and filed a protest of the Buffalo entry, which Customs eventually sustained, holding that the catalysts were properly designated as "catalytic preparations" under subheading 3815.12.00, which were duty free. Id.

Then, more than ninety days but less than a year after the liquidation in Detroit, the importer filed a 19 U.S.C. § 1520(c) reliquidation request as to the Detroit entries, contending that Customs made a mistake of fact by not staying the liquidation of the goods pending Customs' review of the protest of the Buffalo entry. Id. Specifically, the importer argued "that if the district director had been aware of the pending review by the Commissioner, he would have deferred liquidation and, following the Commissioner's decision, would have classified the merchandise in accordance with that decision." Id. Customs refused to find a mistake of fact, and denied the 19 U.S.C. § 1520(c) request on the grounds that the mistake, if any, was a legal mistake. Id.

The Federal Circuit agreed with the result that Customs had reached, pointing out that "there was no factual misapprehension about the nature of the imported merchandise." Id. at 1304. The "fact" of which Customs officials in Detroit were ignorant was that the importer had commenced a 19 U.S.C. § 1514 protest proceeding over the Buffalo entry. That fact related to the legal question of the proper classification of the merchandise. The Degussa court, however, stopped short of declaring the error to be a legal mistake. Instead, the Federal Circuit focused on the materiality requirement, observing that "[i]t is impossible

to state what the district director in Detroit would have done" had he known about the pending Buffalo protest.  Id.

As Degussa demonstrates, not all prima facie "ignorant mistakes" will be remediable under 19 U.S.C. § 1520(c).  Indeed, it would be absurd if 19 U.S.C. § 1520(c) were available to correct an entry every time Customs, at liquidation, was "unaware of the existence of the correct alternative set of facts."  Universal Coops., 13 CIT at 518, 715 F. Supp. at 1114.

Instead, only if it may be said with certainty that Customs would have liquidated at a different rate if it had known the correct facts will 19 U.S.C. § 1520(c) provide relief to aggrieved importers.  When, as in Degussa and this case, the mistake of fact relates to events exogenous to the agency activity, and there is no clear statutory or regulatory instruction for the agency to correct that error, then 19 U.S.C. § 1520(c) is inapplicable.

> *2.    Commerce's Issuance of Erroneous Liquidation*
> *Instructions Due to Rivas' Mistake Is Correctable*
> *under 19 U.S.C. § 1520(c) as a Clerical Error or*
> *Mistake of Fact Not Amounting to an Error in the*
> *Construction of a Law*

Hynix's second argument is that Commerce's issuance of erroneous liquidation instructions due to Rivas' mistake is a mistake of fact that is correctable under 19 U.S.C. § 1520(c).

### a. There Is No Per Se Bar to Invoking 19 U.S.C. § 1520(c) to Correct a Commerce Error

As a threshold matter, it is necessary to examine Customs' claim that "[a]n error on the part of Commerce cannot be corrected under 19 U.S.C. § 1520(c)(1)." Customs Br. at 17. 19 U.S.C. § 1520(c) allows Customs to reliquidate entries "to correct . . . a clerical error, mistake of fact, or other inadvertence . . . in any entry, liquidation, or other customs transaction . . . ." 19 U.S.C. § 1520(c) (1999) (emphasis added). The Court believes Customs' argument burdens the statute with an unduly restrictive interpretation of what happens "in any . . . liquidation." Id.

The plain language of the statute does not require that Customs have committed the "clerical error, mistake of fact, or other inadvertence . . . not amounting to an error in the construction of a law." Id. To the contrary, the statute's pertinent requirement is that there be "a clerical error, mistake of fact, or other inadvertence . . . in any entry, liquidation, or other customs transaction." 19 U.S.C. § 1520(c) (1999) (emphasis added). On the uncontested facts of this case, there was an error in the liquidations. Although that error initially occurred in the preparation and issuance of Commerce's liquidation instructions, the error also occurred in the

liquidations.  The latter, as did the liquidation instructions,
incorrectly assessed the 2.30 percent antidumping duty rate on
the Entries.

Moreover, Congress intended 19 U.S.C. § 1520(c) to be
interpreted liberally to provide an effective mode of redress
for importers whose goods were liquidated at the wrong rate.[11]
See G&R Produce, 381 F.3d at 1332-33; ITT Corp., 24 F.3d at
1388-89 ("Congress clearly envisioned a liberal mechanism for
the correction of the specific inadvertences set forth in
§ 1520(c)(1).").  It is also noteworthy that no court has ever
held what Customs now urges the Court to find: i.e., that
Commerce's errors are per se outside the ambit of 19 U.S.C.
§ 1520(c).

To the contrary, the Federal Circuit reached the opposite
conclusion in a case that involved Commerce's erroneous
exclusion of an importer's name from a suspension of liquidation

---

[11]  The Court notes the Federal Circuit's Fujitsu decision
stressed that 19 U.S.C. § 1520(c) was a "limited exception" and
proceeded to deny relief under that section.  Fujitsu, 363 F.3d
at 1235.  The limiting factor in Fujitsu was the requirement
that one of the three prima facie correctable errors be present.
See id.  Because the issue of the inclusion vel non of Commerce
errors involves the interpretation of "liquidation, or other
customs transaction," 19 U.S.C. § 1520(c)(1), and not the
interpretation of "clerical error, mistake of fact, or other
inadvertence," id., there is no reason to allow Fujitsu's
cautionary analysis prevent the Court from invoking the
liberality instruction from ITT Corp. and G&R Produce.

list regarding entries then subject to a countervailing duty order.  See Omni USA, Inc. v. United States, 840 F.2d 912 (Fed. Cir. 1988).  The case arose in the aftermath of the President's transfer of the administration of countervailing duties from the Treasury Department to Commerce.  Immediately after the transfer, Commerce published a notice of its intent to review all countervailing duty orders then in effect.  Id. at 912.  In the notice, Commerce stayed the liquidation of all entries subject to its review.  Id.  Commerce mistakenly failed to include the plaintiff's goods on the suspension of liquidation list, and the goods were liquidated.  Id.  The Federal Circuit noted that "Section 1520(c)(1) appear[ed] to fit the . . . case like a glove."  Id. at 913.  It was "a statutory instrumentality that is, according to its terms, exactly and precisely suited to deal with [such] an instance . . . ."[12]  Id.

---

[12]  The Omni court's description of the liquidation error in that case is ambiguous.  For instance, that court reasoned that "[i]f Omni had alerted [C]ustoms to the error it had committed within a year, its right remained to protest any refusal to reliquidate under section 1514, and to carry the case to the court."  Omni, 840 F.2d at 913 (emphasis added).  At the same time, the Omni court referred to Commerce's "inadvertence and mistake," id. at 913, for having "inadvertently failed to inform," id. at 914, Customs of the suspension of liquidation list.  Because the Omni decision rested on untimeliness of the reliquidation request, it is understandable that the Omni court did not provide a comprehensive explanation of how 19 U.S.C.§ 1520(c) applied to those facts.  Given the substantial similarity between the cases, and that the Omni court assumed that 19 U.S.C. § 1520(c)

Customs attempts to distinguish Omni on the grounds that "the error and the inadvertence in Omni occurred in the liquidation of the entries." Customs Br. at 18. However, a close reading of Omni reveals the substantial similarity between that case and the issue before the Court. In both cases, Commerce issued incomplete or erroneous instructions to Customs, which performed its administrative role in accordance with law, only to achieve an incorrect result. Both errors became adverse to the relevant importer upon liquidation, and in no way can the Omni error be said to have occurred "in the liquidation of the entries" to a greater degree than Rivas' error.

The Court recognizes that the Omni court ultimately dismissed the case as time barred, and that the quoted language above was dictum. However, the ease with which that court assumed that 19 U.S.C. § 1520(c) applied to an instance where Commerce's inadvertence led to an erroneous liquidation, in conjunction with the plain language of the statute, as well as the Federal Circuit's repeated advisements to interpret the statute liberally, persuades the Court to reject Customs' claim

_____

applied, it is incumbent on Customs to distinguish Omni from these facts. Customs does not even raise the issue of Omni's ambiguous treatment of the origination of the correctable mistake; instead, it argues only that the mistake in Omni somehow involved liquidation more than Rivas' mistake. See Customs Br. at 17-18.

that 19 U.S.C. § 1520(c) excludes all errors committed by Commerce.

Moreover, Customs' arguments reveal a puzzling conception of its own authority to correct Commerce's admitted errors. Customs faults Hynix for not filing a protest under 19 U.S.C. § 1514. See Customs Br. at 18-20. More significantly, Customs actually did grant Hynix's protests as to entries for which the ninety-day time bar did not apply. See Customs' Statement of Facts ¶¶ 27-28. It is unclear why Customs should consider itself permitted to correct Commerce errors pursuant to 19 U.S.C. § 1514, but not 19 U.S.C. § 1520(c), especially when it would appear that 19 U.S.C. § 1520(c) is a more commodious fit for such a correction. After all, 19 U.S.C. § 1520(c) expressly affords Customs the authority to reliquidate based on errors. Conversely, the text of 19 U.S.C. § 1514 applies on its face to "decisions of the Customs Service," 19 U.S.C. § 1514(a), a category that would appear a more tenuous fit in light of Customs' purely ministerial role in antidumping proceedings. See, e.g., Mitsubishi, 44 F.3d at 977 (noting that "Customs does not make any antidumping 'decisions'") (quoting 19 U.S.C. § 1514(a)); Mukand Int'l, Ltd. v. United States, 29 CIT ___, ___, Slip Op. 2005-164, at 9 (Dec. 22, 2005); Royal Bus. Mach's,

Inc. v. United States, 1 CIT 80, 87 n.18, 507 F. Supp. 1007,

1014 (1980), aff'd, 69 C.C.P.A. 61, 669 F.2d 692 (1982).

In addition, the strict division of administrative duties

between Customs and Commerce in the determination and assessment

of antidumping duties assuages the Court's concern that 19

U.S.C. § 1520(c) could transform into an open-ended grant of

authority for Customs to review Commerce determinations.

Because Customs is never permitted to review Commerce's

determinations and conclusions in the course of an antidumping

proceeding, see Mitsubishi, 44 F.3d at 977, Customs may correct

a Commerce error only in a discrete set of circumstances,

subject to the limitations contained in the statute itself.

Where Commerce has acknowledged a correctable error, and

instructed Customs to correct it, such circumstances are

present.[13]

---

[13]  The Court need not decide the more difficult issue of
articulating the precise contours of 19 U.S.C. § 1520(c) with
respect to errors by Commerce that are not recognized by the
agency.  It suffices to say that Mitsubishi's pronouncement that
"Customs has a merely ministerial role in liquidating
antidumping duties[,]" 44 F.3d at 977, stands as a formidable
bar to challenges to Commerce decisions (as opposed to mistakes)
masked as 19 U.S.C. § 1520(c) reliquidation requests.  In
addition, the exclusion of mistakes of law from the purview of
19 U.S.C. 1520(c) will be fatal to any reliquidation request
purporting to challenge Commerce's legal conclusions.  Moreover,
in a case like this where Commerce has admitted its error and
endeavored to correct it, it is easy to gloss over the otherwise
stringent requirement that the error be "manifest from the

In light of the foregoing considerations, the Court finds
there is no per se bar for Customs to reliquidate entries, under
19 U.S.C. § 1520(c), in light of errors committed and
acknowledged by Commerce.

> **b.    Rivas' Error Is a Mistake of Fact Not Amounting
> to an Error in the Construction of a Law**

Hynix contends that when Rivas inserted the erroneous rate
into the template liquidation instruction document without
knowing the correct rate, she made a mistake of fact.  Moreover,
Hynix characterizes the mistake as not involving a decisional
mistake since "[i]n this case, Ms. Rivas had <u>no</u> authority or
discretion to choose one rate over the other . . . ."  Hynix
Reply at 12.  Customs, in response, argues that Rivas believed
she was entering the correct rate but she did not know the legal
consequences of her actions, and therefore committed a mistake
of law.  <u>See</u> Customs Br. at 13-14.

A mistake of law is a decisional mistake, which involves a
"choice between two known, alternative sets of facts."
<u>Universal Coops.</u>, 13 CIT at 518, 715 F. Supp. at 1114.  Courts
find decisional mistakes where the mistaken party errs in
exercising his or her discretionary authority.  <u>See, e.g.</u>,
<u>Brother Int'l Corp.</u>, 29 CIT at ___, 368 F. Supp. 2d at 1351-52

record or established by documentary evidence."  19 U.S.C.
§ 1520(c) (1999).

(customs broker <u>misapplied</u> GRI principles in determining proper tariff classification of merchandise); <u>Universal Coops.</u>, 13 CIT at 518, 715 F. Supp. at 1114-15 (Customs committed a decisional mistake when it allegedly <u>miscalculated</u> the width of imported twine wire, resulting in a higher duty); <u>PPG Indus., Inc. v. United States</u>, 7 CIT 118, 126 (1984) (customs broker failed to file bond under HTSUS, subheading 864.30, which would have entitled importer to duty-free status, because "its <u>cognizant personnel</u> did not know that Item 864.30, TSUS, existed") (emphasis added).

Customs has failed to adduce any evidence that Rivas' responsibilities consisted of anything more, in this instance, than the strictly ministerial task of transferring data from the SAS Printout to the liquidation instructions.  Her own description of her responsibilities as an import compliance specialist is clear and concise: "I would look at the program, I would draft instructions using a boilerplate, insert the appropriate number and send it to the computer specialist to send to Customs."  Rivas Dep. at 13:17-20; <u>see also</u> <u>id.</u> 37:15-18 (Rivas testifying that she would typically consult the SAS Program when preparing liquidation instructions).  The evidence establishes that an import compliance specialist imports data from the SAS Program and the SAS Printout into the template, and

then transfers the template instructions to a computer specialist, see id. 27:9-10, who then transmits the document to Customs electronically.  See id. 27:11-15.

It is evident from the foregoing description of Rivas' duties in preparing liquidation instructions that her role was fundamentally ministerial and not analytical or interpretive. The legally relevant decisions had already been made and were ready to be transcribed by Rivas into the template instructions. If the SAS Program technology allowed for printing liquidation instructions directly, there would have been no error at all. Conversely, decisional mistakes of law cannot be hypothetically sidestepped by imagining computer technology and personnel redundancy.

The error is more properly characterized as a mistake of fact.  A fact existed (the importer-specific assessment rate for Hyundai Electronics America was 1.57 percent) but was unknown, and a fact was believed (the final margin of 2.3 percent should be used for all importers) despite its incorrectness.  The scenario is analogous to Xerox: in that case, as here, an employee vested with non-discretionary authority executed instructions and was found to have committed a mistake of fact. The crucial commonality is the complete absence of any discretionary, decisional authority on the part of the employee.

Also like Xerox, the materiality requirement can hardly be disputed here, since it is obvious that Rivas would have drafted correct instructions had she been made aware of her mistake.

Customs' arguments to the contrary must be rejected because they fail to take into account the nature of Rivas' occupation. It is irrelevant that the facts as to which Rivas made a mistake were of legal import. Those facts related to Rivas only as data to be entered into a template form. Since Rivas was not engaged, in this instance, in the "construction of a law," 19 U.S.C. § 1520(c) (1999), and because she had no decisional authority, she did not commit a mistake of law.

### c.   Rivas' Error Is a Clerical Error Not Amounting to a Mistake in the Construction of a Law

Though the Court finds that Rivas' mistake amounts to a mistake of fact, the Court finds it appropriate to explain why Customs should have labeled Rivas' mistake a "clerical error" and granted the reliquidation request.[14]  Such a response would have obviated consideration of the significantly more complex "mistake of fact" jurisprudence.[15]

---

[14]   The three categories of prima facie correctable errors—i.e., clerical error, mistake of fact, and inadvertence—are not mutually exclusive.  See Ford Motor Co., 157 F.3d at 857.

[15]   Hynix limited its arguments before the Court to the mistake of fact issue, despite having claimed the mistake was a clerical error in the administrative proceedings below.  See HQ 229808,

"A clerical error is a mistake by a clerk or other subordinate, upon whom devolves no duty to exercise judgment, in writing or the copying figures or in exercising his intention." PPG Indus., 7 CIT at 124. Clerical errors are characterized by the absence of exercising judgment and intention, as when a mistake is made in copying or typing figures, or where figures have been transposed. See id. at 124 n.7 (citing inter alia Rapaport v. United States, 4 CIT 215 (1982), Louis Aisenstein & Bros., Inc. v. United States, 34 Cust. Ct. 268, Abs. 58715 (1955)).

In support of that proposition, the PPG Indus. court cited to the Yamada case from Court of Customs and Patent Appeals ("**CCPA**"), the predecessor of the Federal Circuit. See PPG Indus., 7 CIT at 124 (citing Yamada v. United States, 26 C.C.P.A. 89 (1938)). In Yamada, a supervisor at a brokerage firm gave a subordinate broker a certificate and instructed him to file it with one hundred entries for the importer. Yamada, 26 C.C.P.A. at 92. The broker then erroneously and carelessly substituted a different form for thirty-five of the hundred entries. Id. Customs argued that 19 U.S.C. § 1520 did not

---

2003 U.S. CUSTOM HQ LEXIS 215 at *4. As such, the Court considered it appropriate to address the parties' arguments relating to the mistake of fact jurisprudence, in spite of the fact that Rivas' error is more accurately described as a "clerical error" or "inadvertence."

apply because the broker had been "careless and indifferent" and could therefore not be said to have committed a clerical error. Id. at 93-94.

The CCPA disagreed, noting instead that "[i]t is instead our view that clerical error is usually the result of carelessness." Id. at 94. The Yamada court quoted from a 1908 case that is still relevant today:

> Clerical error implies negligence or carelessness; but the question is: Whose is the negligence? If it is that of a "clerk, writer, or copyist," it is clerical error. The expression assumes that the mistake or negligence or carelessness is that of one engaged in the subordinate service of transcription, copying or comparison; a labor not requiring original thought.

Id. (quoting Morimura Bros. v. United States, 160 F. 280, 281 (C.C.S.D.N.Y. 1908) (citation omitted)) (emphasis added).

Lest the continuing authority of these older cases be put in question, it bears mention that the Federal Circuit has recently cited both Yamada and Morimura Bros. with approval. See Ford Motor Co., 157 F.3d at 860. In Ford Motor Co., the Federal Circuit summarized the Yamada holding in terms that evoked language from the PPG Indus. case: "Thus, Yamada teaches that a subordinate acting contrary to binding instructions commits a clerical error. When a subordinate is given binding instructions on particular aspects of a task, no duty devolves upon him to exercise discretion or judgment in carrying out

those aspects." Id.  Therefore, in cases where an employee or other agent has failed to follow "complete, binding, non-discretionary instructions," id. at 861, a clerical error has occurred.

In this case, Rivas received the results from the SAS Program and was charged with entering the data contained therein into boilerplate liquidation instructions for Customs.  Her orders were "complete, binding, [and] non-discretionary." Id. Moreover, her mistake occurred while performing a "subordinate service of transcription, copying or comparison." Morimura Bros., 160 F. at 281.  Her work, while important, was "a labor not requiring original thought." Id.

In light of these considerations, the Court finds that Rivas' error constituted a "clerical error" and thus justified reliquidation under 19 U.S.C. § 1520(c) upon Hynix's request.

### V.   CONCLUSION

The Court observes briefly that it is unfortunate that Hynix had to bring this lawsuit in the first place.  In this case, Hynix, Commerce, and Customs all admit that an obvious, unintended, and unanticipated human error occurred. Nevertheless, Customs chose to drag the Court and the plaintiff into the bramble bush of 19 U.S.C. § 1520(c) to fight reliquidation, set against the obvious equitable result.  To its

credit, Commerce did everything in its power to correct its obvious mistake, only to be stonewalled by Customs' intransigence.  In the Court's view, the error should have been corrected at the outset.

For the reasons set forth in Part IV of the opinion, the Court grants Hynix's motion for summary judgment and denies Customs' cross-motion for summary judgment.  A separate order will be issued in accordance with this conclusion.


                                        /s/ Richard W. Goldberg
                                        **Richard W. Goldberg**
                                        **Senior Judge**


**Date:      January 26, 2006**
            **New York, NY**